# CHARLESTON.

FIRST NAT. BANK OF BRADDOCK, PA., *v.* HYER, *et al.*

Submitted September 22, 1898—Decided March 18, 1899.

1. JUDICIAL SALE—*Reservations in Decree—Property Acquired.*
    In a suit to sell land for its purchase money, on which is a saw-mill that is part of the freehold, and the decree to sell provides that the sale shall not include the mill, a sale of the land does not pass the mill to the purchaser.   (p. 16).

2. JUDICIAL SALE—*Record—Appeal—Collateral Attack.*
    A court, having jurisdiction to sell land, reserves from sale a saw mill thereon.   Though there is nothing in the record to warrant the reservation, it is not void, but voidable only by appeal, and cannot be collaterally assailed.   (p. 16)

3. JUDICIAL SALE—*Rights of Purchaser.*
    A purchaser under a decree is held to know its contents, and what property or estate he is to acquire    (p. 17)

4. JUDICIAL SALE—*Reservations in Decree—Property Acquired.*
    A sale, under a decree, of property which it does not authorize to be sold, or excepts from sale, passes no title to such property and is void.   (p. 17).]

Appeal from Circuit Court, Braxton County.

Suit by the First National Bank of Braddock, Pa., against J. S. Hyer and others.   Decree for defendants, and plaintiff appeals.

*Affirmed.*

V. B. ARCHER, for appellant.

W. E. HAYMOND and BLAND & BLAND, for appellees.

BRANNON, JUDGE:

John Adams conveyed to Reed a tract of land in Braxton County, taking notes for deferred purchase money. J. S. Hyer became assignee of some of the notes, and the First National Bank of Braddock of some of said notes. The land was later conveyed to the Braxton Lumber & Coal Company, which erected a sawmill upon the land. Smith, Meyer & Schnier sold the lumber company a boiler, engine, and other articles of machinery; and the same made up the said mill, which was in a mill house of permanent structure on the premises. Smith, Meyer & Schnier recorded a paper called "Notice of Reservation of Title," claiming to reserve title to said boiler, etc., until purchase money therefor should be paid. The said Braxton Lumber & Coal Company failed. One Miles filed a laborer's lien against said mill, and brought suit in equity against said lumber and coal company to enforce the said lien against the said mill, or, rather, its machinery; and Smith, Meyer & Schnier also brought a chancery suit, claiming a lien upon the machinery in said mill which they had sold said company, and to which they claimed to have reserved title; seeking by their suit to sell said machinery for its purchase money. In these two suits a receiver was appointed, and later there was a decree to sell the machinery for Miles' debt, subject to the claim of Smith, Meyer & Schnier; and later that decree was set aside, and the said machinery was directed to be sold absolutely, and not subject to their claim, and the proceeds to be held and disbursed under the direction of the court, according to the rights of various creditors of the said lumber and coal company. Ruhl, Koblegard & Co. issued an execution against said lumber and coal company, and under their judgment and execution claimed a lien upon said mill, and, as defendants in the suit of Miles, they filed an answer to enforce their lien, and contesting the validity of the lien against said machinery set up by Smith, Meyer & Schnier; and there was a decree holding that they had no lien. J.

S. Hyer brought a suit to enforce against the said tract of land the lien for the purchase money assigned to him, and the First National Bank of Braddock, by petition, became a party to this suit, and set up a claim to a part of the purchase money on the land under the deed from Adams to Reed, which part of said purchase money had been assigned to the bank by Hyer; and in this suit there was a decree subjecting the land to sale for the payment of the moneys going to Hyer and the bank, and in this decree is the clause which is the source of the trouble in this cause, reading, "The sale aforesaid shall not be construed to include the mill of the Braxton Lumber & Coal Company, mentioned in the proceedings in this cause." The special commissioner sold and conveyed the land under this decree to the said bank, not mentioning the reservation of the mill either in his notice of sale or deed to the bank. The bank, hearing of the said decree in the suit of Miles and the suit of Smith, Meyer & Schnier against the Braxton Lumber & Coal Company to sell the said mill, brought this suit against all the parties in interest, for the purpose of annulling the decree in the case of Hyer, which reserved the said sawmill from sale, and to annul the decree in the suits of Miles and Smith, Meyer & Schnier against said lumber and coal company, which subjected the mill to sale, and to enjoin the sale of the mill, and claiming that it (the bank), under its purchase of the land, acquired title to not only the land, but to the mill, also, and claiming that the reservation in the decree had been procured through the fraud of Smith, Meyer & Schnier, and to enjoin the sale of the mill. The injunction was granted. A demurrer to the said injunction bill was interposed, and it was sustained, and the injunction was dissolved, and upon the whole case the bill was dismissed, and the bank appeals.

First, if the claim of Smith, Meyer & Schnier to retain title to the machinery sold by them to the Braxton Lumber & Coal Company had been properly presented to the court, it is likely that the exception found in the decree would have been proper since machinery already under mortgage which is annexed to the freehold, which freehold was already under mortgage, becomes part of the freehold, and therefore subject to the realty mortgage, if it cannot

be severed without material injury to the 'freehold;' yet, if it can be so severed, the owner of the mortgage on the machinery, or the purchaser under that mortgage, may remove it. *Hurxthal's Ex'r* v. *Hurxthal's Heirs*, 45 W. Va. 584, (32 S. E. 237); Jones, Chat. Mortg. §132a. But it is not necessary to so decide. Certain it is that that exception of the mill is in the decree. The question arose in my mind, is that exception null and void? If so, the purchasers would, perhaps, get the mill with the land. If the court, without anything in the record to justify it, in decreeing land under a vendor's lien should except a house or the timber, would the exception be void? If so, would the purchaser get the house or timber, or get only what he bargained for? But, if such a reservation would be void, still it does not show that a reservation of what is only a fixture would be void; for a fixture is presonalty made realty only by annexation, and may be severed and made personalty again. The subject-matter before the court was the sale of the land, with these fixtures upon it, and the decree severed the fixtures, and that was embraced within the scope of the subject; and this exception in the decree, absolving the mill from liability and sale, as I interpret the clause, is not a mere nullity, but an irregularity, at most, and binding the bank as a party until reversed. The bill of the bank is only a collateral attack upon it, which cannot be allowed on any theory that it was error to insert that reservation. It can be changed only by appeal or bill of review, and then only if the bank was aggrieved by it in its debt not being paid from the proceeds of sale. As purchaser it could not reverse it for that cause. It is like a clause in a decree, "without prejudice," which, if improper, can only be corrected by appeal. *Bodkin* v. *Arnold*, 45 W. Va. 90, (30 S. E. 154); 2 Black. Judgm. § 721. So the bank did not get the machinery in its purchase, because it was severed by the force of the decree from the freehold, and not sold. Had the commissioner expressly sold it, his sale would be void, as a sale of a tract of land or thing not decreed to be sold is a nullity. Ror. Jud. Sales, § 489. "A sale without order of court is not a mere irregularity, which must be objected to by some proceedings in the court where the decree ought to have been sought and granted, and which,

if not so objected to, is waived or ratified. It is a proceeding without any legal support. A conveyance in pursuance of it has no force whatever. It may be shown to be void when collaterally attacked. In fact, no attack, collateral or otherwise, need be made." Freem. Jud. Sales, § 9. "The decree of the chancellor must be construed to conform to the sale prayed for in the petition, and a sale beyond that is not rendered valid by final ratification." *Shriver's Lessee* v. *Lynn*, 2 How. 43. More so where the decree prohibits the sale of the particular thing, as in this case. Confirmation cures voidable, not void, sales. If sale is void "because it included property not described in the decree of sale, an order confirming it is necessarily inoperative." Freem. Jud. Sales, § 44. A sale of a parcel of land in addition to that described in the decree, is void. *Burbank* v. *Semmes*, 99 U. S. 138; *Estill* v. *McClintic's Adm'r*, 11 W. Va. 399, does not controvert this doctrine; rather, the reverse. It holds that if a commissioner, without authority, sell land, the court should set aside the sale, at the request of any party in interest, after the purchaser is summoned; that is, where the thing is expressly sold, which is not the case here. The question here is whether the machinery was sold, not whether a sale of it shall be set aside. The fact that the commissioner made no exception in his sale notice and deed does not help the bank. He could not sell what he was not authorized to sell, but was prohibited from selling. He had only naked power, coupled with no interest; and, deriving his power only from the decree, he could not exceed the authority conferred by it. Even an ordinary agent cannot do an act not authorized by his power of attorney. The bank, as a formal party to the suit, and as purchaser, must take notice of the authority of the commissioner, and of what was in the decree, as a purchaser must know what is in his title papers. *Hoback* v. *Miller*, 44 W. Va. 635, (29 S. E. 1014); *Williamson* v. *Jones*, 43 W. Va. 563, 500, (27 S. E. 411. On the day of the sale and before confirmation, the president of the bank had actual notice by information given to him; and he bid the property in, or allowed confirmation of the sale, without objection on the score of this reservation. It seems to me this bars this suit.

I think the machinery did become a part of the realty, except as to Smith, Meyer & Schnier. But what of that? The bank did not buy it. The decree had severed it from the freehold The bill charges that Smith, Meyer & Schnier procured the reservation in the decree by fraud. If so, still the bank did not buy that machinery. Equity will avoid a judgment or decree procured by fraud, but it is not shown that they procured this reservation by fraud. Proof fails of this allegation; and if, on demurrer, it were taken as true, the plaintiff would have no right to set the decree aside, as it had no title to the machinery. But the court read the whole record, and it appears that Smith, Meyer & Schnier were not parties and did not participate in the suit. If they had, in the suit, appeared and asserted their claim, that would not be fraud, since it would be only the case of a party asserting a demand in upon court under the law of the land; and, though that claim be found to be unsustainable ultimately, it is no fraud to assert it. That claim was perhaps good, if sustained by proof, against everybody except creditors of the lumber company. But in fact that reservation was put into that decree at the suggestion of the plaintiff in that case, Hyer, under the impression that the claim of retention by Smith, Meyer & Schnier of title was valid, and that firm had nothing to do with its insertion. So, the bank, having no title to this machinery, could not maintain an injunction to stop its sale under decree in the suits named, and the decree dissolving it and dismissing the bill is affirmed.

*Affirmed.*