# CHARLESTON.

Hyer *et al. v.* Smith *et al.*

Decided December 15, 1900.

1. Contract—*Rescission—Fraud—Sale.*

Plaintiffs took from defendants, in consideration of one thousand five hundred dollars cash, an assignment in writing, without recourse, dated November 24, 1897, of all their right, title, and interest, liens and claims, in and to the sawmill machinery and appliances located on insolvent debtor's lands, and defendants turned over to plaintiffs, at the same time, the notes indorsed by individuals, representing a large part of the debt, representing to plaintiffs that, by contract with the debtor, defendants had reserved title to the machinery, etc., until purchase money should be paid, and that there was still due on said debt about three thousand four hundred dollars. It turns out that although defendants had filed and recorded reservations of title under section 3, chapter 74, Code, the same was done without contract or agreement with purchaser made at the time of the purchase, or before delivery of the goods and acceptance of checks and notes representing the consideration, in compliance with written contract of sale; and it further appearing that the indorser on a part of the notes so turned over to plaintiff had been sued by the bank of the defendants, judgment obtained thereon for two thousand four hundred and eight dollars, and the judgment entered satisfied in full, November 17, 1897, a week before the assignment to plaintiffs; *held,* that the representations of defendants were fraudulent, and plaintiffs entitled to rescission of their contract, and to recover back their money. (pp. 558, 559).

2. Reservation of Title—*Agreements.*

To entitle a vendor of personal property to the benefit of the reservation of title as security for the purchase money thereof, as against creditors and purchasers, under section 3, chapter 74, Code, an agreement or contract must be made contemporaneously with the sale, or before the delivery of possession of the property, between the vendor and vendee, that such reservation shall be made, and such reservation recorded. (pp. 560, 561).

Appeal from Circuit Court, Braxton County.

Bill by J. S. Hyer and J. H. Chapman against Smith, Myers & Schnier and others. Judgment for plaintiffs. Defendants appeal.

*Affirmed.*

JAMES B. FOWLER and GOEBEL & BETTINGER for appellants.

JAKE FISHER and W. E. HAYMOND, for appellees.

McWHORTER, PRESIDENT:

Smith, Myers and Schnier of Cincinnati, in the fall of 1896, proposed in writing to sell to Braxton Lumber and Coal Company certain machinery, and fixtures for a mill named and described in said proposition, which closes as follows:

"We will deliver the above on cars in Cincinnati not later than November 1st, for the sum of five thousand four hundred dollars, terms five hundred dollars cash, five hundred dollars in thirty days and the balance in equal payments at four, six and nine months, with interest at six per cent. from date of shipment; settlement to be made on date of shipment, and notes to be signed by the Braxton Lumber and Coal Company, and to be endorsed by Hudson & McCue, John Rinard, W. H. Veno and W. J. Spahr. The machinery mentioned is guaranteed to be good material and workmanship, and if properly handled with logs of good quality and fair size to cut from poplar twenty-five thousand feet per day. Yours respectfully,

"SMITH, MYERS & SCHNIER."

"Accepted.

"BRAXTON LUMBER & COAL CO.,
    "*By* W. A. HUDSON, *President.*

"(Corporate Seal)."

This proposition is without date. In October, 1896, while the machinery was being prepared, some correspondence took place between Smith, Myers and Schnier and the Braxton Lumber and Coal Co. about further security for the deferred payments by deed of trust, or mortgage on the goods to be furnished under the contract, the vendee through its president expressing a willingness to execute such lien. On the 25th of November, 1896, Smith, Myers & Schnier wrote the vendee, "We are in receipt of your favor of the 24th inst., enclosing checks and notes in full settlement for saw mill machinery shipped you recently in accordance with agreement for which kindly accept our thanks. We have sent you a good mill outfit and know that it will give you entire satisfaction, and trust you will soon have it up and running. With regards, etc., we remain, Yours truly."

On December 2, 1896, S., M. & S. wrote their attorney, W. E. R. Byrne, that they had recently shipped to B. L. & C. Co. quite a large amount of saw mill machinery and asked him to have executed an instrument to secure the deferred payments on same, and suggested that a deed of trust would be best in his State (W. Va.). On the 4th of December, 1896, Mr. Byrne enclosed to them the draft of a document under section 3, chapter 74, Code, reserving title, with instructions how to describe property, etc. S., M. & S. returned it, completed and signed up, to Byrne, on the 9th, and on the 11th of December, 1896, the paper was recorded. On the 5th of January, 1897, S., M. & S. proposed in writing to furnish B. L. & C. Co. one No. 2 Hill Standard Oscillating Cylinder Steam Nigger complete as usual with other things mentioned, on cars at Cincinnati for six hundred and ten dollars net, one Kline log stop, etc., on cars at Cincinnati for two hundred dollars, other machinery, etc., mentioned for one hundred and twenty-five dollars net. "We agree to take back the one head log turner at eighty dollars, all to be delivered within two weeks from this date. We agree to accept the note of the company endorsed individually by Hudson & McCue, John Rinard and W. J. Spahr for ninety days from the delivery of said machinery. They are to pay three hundred dollars on said note, with one renewal of ninety days for the balance, said note to bear interest at six per cent." These goods were shipped on the 4th of February, 1897, and a reservation of title recorded on the 3d day of March, 1897. On the 10th day of November, 1897, S., M. & S. made an assignment to Herman P. Goebel, assignee, for the benefit of their creditors. In November, 1897, A. Bettinger, attorney at law, was at Sutton looking after the claims of S., M. & S., and learning that J. S. Hyer would probably buy the claim of his clients, S., M. & S., against the B. L. & Coal Co. requested Mr. Fowler to see if Mr. Hyer would make a proposition of purchase. Mr. Fowler saw him, and he had an interview with Bettinger, and made a proposition in writing signed by J. S. Hyer and J. H. Chapman, which proposition is dated November 22, 1897, and is as follows:

"We will give you for the claim of Smith, Myers & Schnier, against the Braxton Lumber & Coal Company and take the same without recourse five hundred dollars cash, five hundred dollars three months, five hundred dollars six months, negotiable paper with six per cent. interest, with the privilege of paying before

that date, to be accepted or rejected by 9 a. m. this date," which proposition was rejected. They then offered one thousand five. hundred dollars in cash, which was accepted on November 24, 1897, and assignment and transfer made on that date, as follows: "In consideration of the sum of fifteen hundred dollars to us paid in cash by J. S. Hyer and J. H. Chapman, the receipt whereof is hereby acknowledged, we the undersigned do hereby sell, assign, transfer and set over unto the said J. S. Hyer and J. H. Chapman all our right, title and interest, liens and claims in and to the saw mill, machinery and appliances, located on the land of the Braxton Lumber & Coal Co., in Braxton County, West Virginia, described in two certain reservations of liens signed by Smith, Myers & Schnier and filed respectively on December 11, 1896, and March 3, 1897, with the county clerk of Braxton County, West Virginia, and recorded in trust deed book No. 3, pp. 169 and 217, and to enforce which suit is now pending in Braxton County circuit court. This assignment and transfer is without recourse on us.

"In witness whereof we have hereunto set our hands this 24th day of November, 1897.

　　　　　　　　"SMITH, MYERS & SCHNIER,
　　　　　　　　"HERMAN P. GOEBEL,
　　　　"*Assignee of Smith, Myers & Schnier.*"

On the 17th day of December, 1897, J. S. Hyer and J. H. Chapman sued out their subpœna in chancery in the circuit court of Braxton County against S., M. & S. and Herman P. Goebel their assignee, and filed an affidavit and sued out an order of attachment and designated James B. Fowler as being indebted to and having in his hands money and effects of said defendants. And at the January rules, 1898, filed their bill, alleging that they were informed and believed that S., M. & S. sold to B. L. & C. Co. certain machinery and caused two notices to be recorded in which they claimed to have reserved the title to said property until the purchase money should be paid thereon; that said S., M. & S. made an assignment to Herman P. Goebel, assignee, for the benefit of their creditors; that shortly prior to November 24, 1897, said S., M. & S. and the said assignee through their duly authorized agents and representatives, represented to the plaintiffs that said S., M. & S. had by contract with the B. L. & C. Co. reserved the title to the said machinery so sold it until the purchase money should be paid thereon, and that there

remained unpaid thereon the sum of about three thousand four hundred dollars, and offered to sell said claim to plaintiffs, who relying upon said representations and believing there was in fact said contract between said S., M. & S. and B. L. & C. Co., as so represented, did accept an assignment of the interest and right so reserved and set out in the notices of title recorded and paid said defendants or their attorneys one thousand five hundred dollars therefor, which assignment is in writing dated November 24, 1897, and exhibited with their bill. That after paying said sum and accepting said assignment, plaintiffs learned the fact that there never was any contract or agreement whatever between S., M. & S. and B. L. & C. Co., that such title should be so reserved on the machinery, and they did not in fact retain title thereto nor any part of it, but delivered the machinery to the B. L. & C. Co. without such reservation, and that after it was so delivered and without any agreement or understanding whatever with said B. L. & C. Co., that such was to be done, they recorded the notices, which notices plaintiffs allege and believe were false and did not state the truth as to the title, and that the title had before passed to said B. L. & C. Co. That B. L. & C. Co. is a corporation and is and was at the time of said assignment to plaintiff insolvent and that without a reservation of title as represented, there is not so far as plaintiffs know any value whatever in the matters assigned to them, and they say that but for the understanding they had that the title was so reserved, they would not have given the said sum of one thousand five hundred dollars nor any other sum for said assignment; and allege that the representations of defendants to plaintiffs were as they are informed and believe false and fraudulent and were known to defendants to be false when made, and were made for the purpose of inducing the plaintiffs to pay the said sum of one thousand five hundred dollars, and that they wholly relied upon said representations and were by means thereof defrauded of the said sum of one thousand five hundred dollars, and that they are entitled to recover same from defendants; that said defendants are non-residents of the State, and plaintiffs had sued out their attachment in this cause against defendants, and pray for decree against defendants for said sum of one thousand five hundred dollars with interest and costs, and for general relief, which bill was verified. Defendants S., M. & S. and

Goebel answered the bill admitting the sale of the machinery to the B. L. & C. Co., and that they caused the two notices of reservation of title to be recorded; that S., M. & S. made an assignment for the benefit of their creditors on the 10th day of November, 1897, to said Goebel, and admit it true that respondents S., M. & S. on or about the 24th of November, 1897, and respondent Herman P. Goebel, assignee, represented to plaintiffs that S., M. & S., had by contract with the C. L. & C. Co. reserved the title to said machinery so sold until the purchase money should be paid, and that there remained unpaid thereon the sum of about three thousand four hundred dollars, but denying that respondents or either of them offered to sell said claim to plaintiffs, but on the contrary that plaintiffs offered to buy respondents' claim of title to said machinery, and proposed to give one thousand five hundred dollars for same, without recourse, which offer was in writing; admit that plaintiffs paid the one thousand five hundred dollars, and took the assignment without recourse, deny that plaintiffs learned after the assignment that there was no contract between the parties to reserve the title to said machinery, but delivered such machinery without such reservation of title, and that after it was so delivered and without any agreement or understanding whatever with the B. L. & C. Co., that such was to be done they recorded the notices, but that on the contrary plaintiffs knew the nature of the claim of title to said machinery asserted by S., M. & S. a long time prior to date of plaintiffs purchase thereof; aver that said notices of their claim of title correctly recite the contract between S., M. & S. and B. L & C. Co., and that the same is true in every respect, and deny that said notices are false and do not state the truth, and that said title passed to B. L. & C. Co. before the preparation and recordation of the notices, and aver that the title never did pass to B. L. & C. Co., but as to said company the title remains in said S., M. & Admit it may be true that B. L. & C. Co. was at the time of the Admit it may be true that B. & L C. Co. was at the time of the deal between plaintiffs and respondents insolvent, but if such was the case, plaintiffs had knowledge thereof above respondents as plaintiffs reside in same county where the lumber company carried on its business and were directly or indirectly creditors of said lumber company, and respondents reside in Cincinnati, Ohio, and the only knowledge they had of the insolvency of said company was from information obtained largely from plaintiffs

given to them at the time of said deal.  Deny that the representations made by them or either of them were false and fraudulent and were known to be false and fraudulent at the time of said transaction, and were made for the purpose of inducing plaintiffs to pay said sum of one thousand five hundred dollars, but aver that every act on their part was in good faith and that they made no representations as to their said claim which were false or fraudulent, and that they held out or offered no inducements to plaintiffs except the truth, and deny all fraud, misrepresentation and wrong doing on their part or on the part of either of them, and having, etc., which answer was verified.  Depositions were taken and filed in the cause both for plaintiffs and defendants.  The cause was heard on the 8th day of December, 1899, and the court rescinded and annulled the contract between defendants and plaintiffs dated November 24, 1897, purporting to be assignment by defendants to plaintiffs of certain rights, title, interest, liens and claims to the saw mill machinery and appliances and decreed the recovery by plaintiffs of the one thousand five hundred dollars paid and its interest, and decreed that James B. Fowler pay to plaintiff one thousand three hundred and twenty-two dollars and eleven cents, the amount he admitted in his answer to be in his hands belonging to defendants, with interest from date of decree, to be credited on the plaintiff's decree.  From this decree defendants appealed and assign several errors.

The defendants owned a debt against the B. L. & C. Co., represented by notes given by said company, and endorsed by individuals, for the price or a part of the price of certain goods and chattels sold to the company, the maker of said notes.  Defendants had caused notices of reservation of title to said goods and chattels to be recorded as provided by section 3, chapter 74, Code.  It is admitted in the answer of defendants that they represented to plaintiffs at the time of the purchase by them of the claim for one thousand five hundred dollars cash, that the reservation of title as shown by said notices was by contract with the vendee, and that there was about three thousand four hundred dollars due defendants on said claim.  Plaintiffs claim that having learned that there was no contract between the defendants and vendee for the purchase of said machinery authorizing such reservation of lien, and that a large part of the three thousand four hundred dollars had been paid prior to the purchase, the representations of defendants being false and fraudulant plain-

tiffs bring their suit to rescind the contract of purchase and recover back their one thousand five hundred dollars. The goods were purchased on written contract. The first purchase is on a written proposition made by S., M. & S., accepted in writing by B. L. & C. Co., given in the statement of this case above. The terms in that proposition specifies how the deferred payments are to be secured by the note of the vendee with personal endorsements, naming the endorsers to be. After the acceptance of this contract, there is some correspondence between the contracting parties concerning a lien by trust deed or mortgage on the goods sold, but not a word about reserving title, the goods are delivered on the 13th day of November, 1896, from which day the title vested in the vendee. The checks and notes were made and delivered, and receipt of same acknowledged November 25, 1896, "in full settlement for saw mill machinery shipped you recently in accordance with agreement for which kindly accept our thanks." From that day, if not from the 13th day of November, there was no longer title in the vendor, and the only way a lien could then have been created was by some of the modes prescribed, certainly not by reserving title under section 3, chapter 74. How could the vendor reserve to himself title of which he had been completely devested? That provision only enables one to secure his own to himself while the title is in him. After the vendor has been devested of title by the sale of the property completed by delivery of the possession thereof and the acceptance of the consideration the parties could not even by agreement vest title in the vendor under that section of the statute. That is a specific provision to enable an owner of property yielding possession and the equitable title to his vendee so that the vendee may enjoy the use of it, and yet he be secure in the purchase money due him. It is insisted by appellants that the letter of 21st October, 1896, from S., M. & S., to B. L. & C. Co. was full authority for retaining title as a lien. The reply being, "We are perfectly willing to give lien, deed of trust or mortgage on machinery to secure deferred payments. * * * * You can have mortgage, lien or anything else you wish." If S., M. & S. had then notified the vendee that under their proposition they would retain the title as security, it would have made it good, having consent of purchaser, but the goods were delivered November 13, the full consideration received November 25, and the reservation scheme

thought of by no one until December 4, when Mr. Byrne wrote the firm of S., M. & S. in reply to theirs of December 2, asking him to have some sort of instrument executed to secure the debt, and suggesting a trust deed, that their debt could be secured by reserving title, and that was some time after the title was vested in B. L. & C. Co. The depositions of the witnesses are conflicting even as to the B. L. & C. Co. consenting after the delivery of the goods to a reservation of title in the vendor. The written contracts under which the machinery was sold, in each instance giving prices and terms as to payments to be made are entirely silent as to any security except the individual endorsements mentioned and the sales completed therunder by the delivery of the goods to the vendee and the payment of the checks and notes to the vendor, and the correspondence touching liens upon the property to be executed by the vendee it seems to me is conclusive as to the insufficiency of the notices of the reservation of title, as in neither instance was such reservation suggested until after the delivery of the goods to the vendee according to the terms of the purchase in the written agreement. Appellants say the court erred in that "this being an assignment of a chose in action with a suit pending to enforce the same, appellees cannot have their action without alleging and showing an adverse determination of the pending suit, or some other judicial determination against the validity of the lien, based on the infirmity alleged in the complaint," and cite *Huston* v. *McNeer,* 40 W. Va. 365; *Berry* v. *Kennedy,* 5 Mon. (Ky.) 120, and *Morrison* v. *Glass, Id.* 240; also *Passman* v. *Prather,* 9 Dana (Ky.) 57, in support of their contention. In the case of *Huston* v. *McNeer* a bond has been assigned in writing as in this case without recourse on the assignor, and it is held that "by such contract the assignee takes upon himself all risks of collecting money, provided the instrument assigned was in fact what it seemed to be—a genuine, valid subsisting debt." It is also there held, "To avoid such contract, the representation must be of a material fact, and be false within the knowledge of defendant, and be made with intent on his part that plaintiff should act upon it, which representation the plaintiff, in ignorance of its falsity, relies upon, and is thereby misled to his injury and damage." In *Guinn* v. *Byrd,* 32 Grat. 293, it is held that such "misrepresentation of a material fact constituting an inducement to the contract, on which the purchaser has a right

to rely, is a ground for a rescission of the contract by a court of equity, although the party making the representation was ignorant as to whether it was true or false; and the real inquiry is not whether the vendor knew the representation to be false, but whether the purchaser believed it to be true, and was misled by it into entering into the contract," and the same is held in *Linhart* v. *Freeman*, 77 Va. 540, where it is further held, "To entitle the person making the misrepresentation to defend on the ground that the purchase was not induced by it, he must demonstrate that it was not relied on by the purchaser." In case at bar the thing assigned to plaintiffs was "all right, title and interest, liens and claims in and to the saw mill machinery and appliances, located on the land of the Braxton Lumber and Coal Co.," etc. The only thing that could be of value was the reservation of title to said property, and the individual endorsements on the notes, as the B. L. & C. Co. was conceded to be utterly insolvent, and defendants admit in their answer that at the time of the assignment they represented to the plaintiffs that said S., M. & S. had by contract with the B. L. & C. Co. reserved the title to said machinery so sold it until the purchase money should be paid and that there remained unpaid thereon the sum of about three thousand four hundred dollars." Was the thing assigned what it seemed to be? Was the reservation of lien valid, as represented by defendants? If plaintiffs had delayed action until the invalidity of the lien or reservation of title was adjudicated to be worthless, as it must have been, the assets in the county, of the said S., M. & S. would have been gone. As it was their attachment only reached a little more than one thousand three hundred dollars of the money they had paid for the assignment, which was still in the hands of James B. Fowler, S., M. & S. having made a general assignment a few days before plaintiffs purchased this claim. Appellants also quote from JUDGE BRANNON's opinion in *Bank* v. *Hyre*, 32 S. E. 1000 (46 W. Va. 13), where he says: "If the claim of Smith, Myers and Schnier to retain title to the machinery sold by them to the Braxton Lumber and Coal Co. had been properly presented to the court," etc. This reference to the reservation of title is only incidental and upon the presumption that said claim of title was legal and valid. At the time of the purchase of the claim and assignment thereof to plaintiffs, the defendants turned over to plaintiffs the notes representing the

most of the claims. Plaintiffs file with the deposition of J. S. Hyer the said assignment and the notes. It appears from an exemplified record of proceeding in the common please court of Allegheny County, Pennsylvania, that suit had been brought by the Third National Bank of Cincinnati on two of said notes, one of one thousand four hundred and sixty-six dollars and sixty-six cents, with interest from November 16, 1896, and three dollars and ninety-four cents protest fees, the other for eight hundred and forty-five dollars, with interest from May 5, 1897, against W. J. Spahr, one of the endorsers on said notes on which judgment was taken September 13, 1897, against said Spahr for two thousand four hundred and eight dollars and ninety-five cents, which judgment is by an entry on the appearance docket shown to be satisfied in full November 17, 1897, signed by "Third National Bank of Cincinnati, by Cassidy & Richards, attorneys for plaintiffs." This amount collected by appellants through the Third National Bank of Cincinnati by this judgment was all that could be collected on the claim independent of the property, and they turned the notes over without informing their assignees of their payment. This judgment was satisfied just one week before the date of the assignment, and the transfer of the notes to plaintiffs. Appellants claim that there is no charge made in the bill that these notes were paid at the time of the transfer, therefore evidence is not admissible to sustain it, and then waive the point and assert that the charge is untrue, that the settlement made with the sureties Spahr and Rinard with creditors of B. L. & C. Co., who held their endorsements, did not discharge or affect the liability of B. L. & C. Co. to S., M. & S. or any lien which the latter held. While it did not relieve the B. L & C. Co. from liability for the debt, it was a payment to the extent of the judgment which would have entitled the endorsers to be subrogated to the rights of S., M. & S. to the extent of the amount paid as against B. L. & C. Co., and in any event plaintiffs could not again look to the endorser who paid the judgment. While it is not charged directly in the bill that the judgment was obtained on the notes and satisfied before the assignment, it is alleged that defendants represented there was about three thousand four hundred dollars yet unpaid on the debt, and defendants in their answer admit the allegation, when it is true that the amount of the judgment should have been a credit on it as against

S., M. & S.   It is absolutely certain that S., M. & S. knew
when the assignment was made to plaintiffs, that they did not
reserve title at the time the goods were contracted for nor prior
to or at the time of their delivery to B. L. & C. Co., whether
they thought or supposed they could by agreement reserve title
to goods in which they had no title, the sale of which they had
completed by delivery and had accepted the consideration in
checks and notes endorsed exactly as provided in their written
contract of sale, it seems to me hardly affects the case.   In *Wil-
liams* v. *Gillispie,* 30 W. Va. 586, it is held, "The vendor of
personal property has no implied or equitable lien on the prop-
erty for the purchase money," and in *James* v. *Bird,* 8 Leigh 510,
it is held that "The vendor of personal property has no lien
for the purchase money on the property notwithstanding it be
still in the vendor's hands." *McCandlish* v. *Keene,* 13 Grat.
615.   Defendants objected to the reading of the last deposition
of the plaintiffs because they had both been before examined
as witnesses in the case.   Their depositions were retaken on
motion of plaintiffs by leave of the court.   And it is claimed
that the court erred in reading at the hearing the notes filed
with the deposition of J. S. Hyer, because they were not a part
of the assignment; true they are not mentioned in the written
assignment, but they were transferred into the possession of
plaintiffs with the assignment and were a part of the transac-
tion.   I see no error in the decree and the same is affirmed.

*Affirmed.*