# CHARLESTON.

LAZEAR *v.* OHIO VALLEY STEEL FOUNDRY CO. *et al.*

Submitted September 11, 1908.   Decided February 2, 1909.

1.   RECEIVERS—*Title to Property — Liens — Priorities — Conditional Sales.*

Although section 3101, Code 1906, by recording notice thereof, as prescribed, gives the seller right of reservation of title to goods and chattels sold, as security for unpaid purchase money, nevertheless, when such reservation of title relates to property sold to special receivers, to be used by them in original construction and completion of a manufacturing plant, which is subject to prior liens of creditors, and also to the prior and paramount lien of receivers certificates, fixed by decree under which such special receivers are authorized to act, such reservation of title to the property sold, affixed and become a part of such plant, will be protected only when it can be done without detriment or injury to the rights and priorities of such prior lienors. (p. 110.)

2.   SAME—*Sales of Property—Distribution of Proceeds—Certificates.*

Where a sale of such manufacturing plant has been decreed and sale made as a whole, by commissioners, and reported and

confirmed to the purchaser, without exception; and the proceeds thereof are inadequate to pay the holders of such receivers certificates, the court will not attempt to adjust alleged equities of vendors, by virtue of such reservation of title to the property purchased from them and used by such special receivers in original construction and completion of such plant. (112.)

3. SAME—*Receivers' Certificates—Lien and Priorities.*

Where special receivers of a manufacturing plant are authorized by decree to issue and sell a limited amount of receivers certificates, estimated as adequate for completing the plant and putting it in operation, such certificates to constitute a first lien on all and singular the real estate and personal property, rights, franchises, and assets of whatsoever kind and wheresoever situate, then belonging to the defendant company, or thereafter acquired; and also upon the income and earnings of said property; and also to be prior to all liens or claims against said company existing at the time of the issuance thereof; and with authority given by such decree "to enter into such contracts and agreements as may be necessary and expedient for the maintaining and preserving of said property, the completion of the said plant and the operation of the same," such decree will not be construed as implying authority on grounds of necessity or expediency, to purchase property for original construction on credit, or partly on credit, with reservation of title to the sellers as security for unpaid purchase money, so as to endanger the security of the holders of receivers certificates fixed by such decree. (p. 114.)

4. SAME.

Where such receivers certificates are issued, and the court as in this case, impresses upon them a preferential lien, good faith requires, that its promise should be redeemed, in the absence of fraud shown in the issuance thereof. (p. 115.)

5. SAME—*Certificates—Liens.*

The rights of such certificate holders are so far vested rights, that a court is as powerless to divest them as it would be to divest or displace any other prior lien, without the consent of the lienor. (p. 115.)

6. SAME—*Power to Contract.*

A receiver is an officer of the court, and is not in any sense an agent or representative of either party to the cause; he is not such general agent as to have any implied power; and a receiver can make no contract, effectual against the trust, which is not first lawfully authorized or subsequently ratified by the court. (p. 117.)

7.   ESTTOPPEL—*Acts—Prejudicial to Third Party.*

    Where a person tacitly encourages an act to be done, he can not afterwards exercise his legal rights in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily prejudiced by the assertion of such adversary claim.  (p. 119.)

Appeal from Circuit Court, Wetzel County.

Bill by George W. Lazear and others against the Ohio Valley·Steel Foundry Company and others. Decree for plaintiffs, and defendants Mackintosh, Hemphill & Co. appeal.

*Modified and Affirmed.*

THOS. P. JACOBS, for appellants.

HALL & HALL, WALLACE & WATSON, and E. O. KEIFER, for appellees.

MILLER, PRESIDENT:

The decrees appealed from were pronounced in two suits, consolidated, brought by lien creditors against defendant corporation, insolvent, for the appointment of a receiver of its property, located at Paden City, Wetzel county, and to subject it to the payment of their liens. At the time of the institution of the suits the plant had not been completed. Much in building and necessary machinery remained to be supplied. A vendor's lien of $15,000.00 remained on the land, and, in its then condition, creditors had little chance of realizing much by a sale of the property. With the purpose of trying to better conditions, the special receivers, upon their petition, all the creditors acquiescing, by order entered on June 6, 1904, were authorized to issue and sell five hundred receivers certificates, of one hundred dollars each, aggregating $50,000.00, the same to constitute a first lien on all and singular the real and personal property, rights, franchises, and assets of whatsoever kind and wheresoever situate, then belonging to the defendant company, or thereafter acquired; and also upon the income and earnings of said property; and also to be prior to all liens or claims against said company existing at the time of the issuance thereof, no certificates to be sold until at least $40,000.00 thereof should be subscribed, to be equal in priority, without regard to date of issuance. The receivers were authorized and directed to apply the proceeds of the sale thereof to the payment of the expenses of maintaining and preserving

the property, and of completing the mill, in course of construction, ready for operation, and in the operation thereof when completed; and to that end they were authorized *"to enter into such contracts and agreements as may be necessary and expedient for the maintaining and preserving of said property, the completion of the said plant, and the operation of same."* They were also authorized to apply $15,000.00, of the proceeds of the sale of said certificates to secure a release of said purchase money lien. The said order also provided that nothing therein should in any way effect the priority of liens or equities as between creditors.

The record shows that of more than $40,000.00 receivers certificates subscribed for, $34,900.00, were actually sold, and from the cash proceeds thereof, $6,837.86 was paid appellants, Mackintosh, Hemphill & Co.; $4,300.00, were issued to appellants, Hoovens-Owens-Rentschler Co. in part payment of their account; and $2,500.00, to J. E. Schlieper & Co.; $900.00, to D. L. Gillespie & Co., and $500.00, to Savage Fire Brick Co., in part payment for other machinery and supplies purchased by said special receivers from them; and of the remaining certificates sold and purchased the appellees, Harry Watson, holds $20,900.00, and Thomas Watson, $1,700.00.

August 26, 1904, the receivers entered into a contract with The Hoovens-Owens-Rentschler Co. for certain machinery to be manufactured, placed in and attached to said plant, at the price of thirteen thousand dollars, on the terms of one third cash on bill of lading, one third in nine months, and one third in twelve months with interest; said contract, not recorded in the county clerk's office until January 7, 1905, also contained the following provision relied on: "The title or ownership of the machinery called for under the terms of this contract shall remain with us until full and final payment therefor shall have been made according to the terms herein stated and until notes, if any, shall have matured and have been settled in full. In case of default of any of the payments above provided for we may repossess ourselves of above mentioned machinery wherever found, and shall not be liable in any action at law on the part of the purchaser for reclaiming our property, nor for the repayment of any money or moneys which may have been paid by the purchaser in part payment for the engine."

And on October 3, 1904, the receivers also undertook to accept two propositions in writing of Mackintosh, Hemphill & Co.; one, dated September 16, 1904, the other dated September 26, 1904, by the first of which they purchased one bar shear, with steel casting gears, with electric motor for driving same, at the price of one thousand and fifty dollars; and by the second, a lot of other machinery and appliances, at the price of eleven thousand dollars, all to become affixed to the plant, payments on both contracts to be made on monthly estimates of material furnished and work done, of which 80% was to be paid monthly until 60% of the price should be paid, and if said 60% should not be paid when said machinery should be completed the same to be held until such payment was made, the remaining 40% to be paid in one year from date of shipment. Each of said contracts or propositions also contained the following provisions, relied on by appellants: "The title or ownership of the machinery called for under the terms of this contract shall remain with us until full and final payment shall have been made according to the terms herein stated, until notes, if any, shall have been matured, and have been settled in full." These contracts were not recorded in the county clerk's office until December 13, 1904.

The project of completing and putting the plant in successful operation, by the receivers, failed. The funds derived from the sale of receivers certificates becoming exhausted, renting the plant to Watson and others was tried as a means to final success. This, too, failed. Further proceedings were then begun, the causes were referred to a commissioner for an accounting, with a view to final liquidation, and sale and disposition of the property, as decreed. Appellants, and other creditors of the receivers, then intervened in the causes by petitions, asserting their alleged liens, and claiming rights and priorities, denied them by the decrees appealed from. In their intervening petitions appellants do not specifically object to a sale of the property as a whole; but in the petition of Mackintosh, Hemphill & Co. they waive no rights and ask that in any sale made of said plant their rights may be fully protected by a sale of their property separately; both ask that their rights may be enforced independently of other creditors, but they do not seek recovery of the possession of the specific property covered by their contracts.

The property was decreed to be and was sold and confirmed April 27, 1906, to Walter B. Eichleay, at the price of $35,025.00.

It is not claimed by appellants that the special receivers had any other authority to contract with them except that conferred by said order of June 6, 1904, and implied thereby; but they say that order invested them with ample powers to enter into the contracts of sale and purchase with them. On the other hand the appellees contend that said receivers had no power or authority given by said order to contract so as to incumber the existing or after acquired property, except by the sale of said receivers certificates, limited to the $50,000.00 authorized thereby.

The commissioner's report shows the state of the accounts of appellants with the special receivers as follows: Mackintosh, Hemphill & Co. Amount of contract and freight, $13,072.16; cash paid on account, $6,234.30; balance due, $6,837.86. The Hoovens-Owens-Rentschler Co. Amount of contract and freight bill estimated $13,550.00; amount paid in receivers certificates, $4,300.00; balance due, $9,250.00.

The decree of December 15, 1905, appealed from, adjudged said contracts with appellants illegal and void for want of authority conferred; appointed commissioners, and directed a sale of the property; that of October 2, 1907, directed the balance of the proceeds of the sale previously reported and confirmed, $17,455.17, applicable to the payment of debts, applied and paid *pro rata* to the holders of said receivers certificates, including the $4,300.00 thereof held by said Mackintosh, Hemphill & Co.

Whatever may be the proper construction of the decree of June 6, 1904, we think the court in the decree of December 15, 1905, unadvisedly declared the individual liability of said receivers under said contract. No pleadings or proofs in the cause, we think, justified such a declaration. The appellants sought no relief against the receivers in their individual capacity. The question of the individual liability of said receivers to appellants upon said contract, is not presented by the record and is not decided; yet, in as much as the decree below is complained of by said receivers, we think the decree should be modified by striking out the declaration of their individual liability, and it will be so ordered in the decree to be entered here.

The appellants seek a reversal of the decrees below upon three grounds: First, that Code, section 3, chapter 74, gives right

of reservation of title to goods and chattels until the same be paid for, of which they can not be lawfully deprived by the decrees complained of; second, that the decree of June 6, 1904, properly construed, empowered said receivers to enter into the contracts with them; and, third, if said decree be otherwise construed, nevertheless, the court was without justification in depriving them of their property without giving them the benefits of their lien, or placing them in *statu quo,* as far as possible, with respect to their property.

On the other hand, the appellees would sustain said decrees upon the following grounds: First, that to give the broad effect to their liens claimed by appellants, would be to displace the lien of the receivers certificates as decreed, and subordinate them in the distribution of the residue of the proceeds of the sale of defendant's plant, to the alleged liens of the appellants, not justified by law; second, that the doctrine of vested rights applies to receivers certificates, and that they cannot be deprived of their lien, without their consent; third, that the appellants assumed all risk of their *ultra vires* contracts with said receivers; fourth, that having sold and delivered said machinery and appliances to said receivers, to be permanently attached to the real estate upon which the receivers certificates were made a first lien, appellants are estopped from asserting any right of priority on the property or the proceeds of the sale thereof, to the injury of the security of the certificate holders, and must be regarded as having waived their rights, if any, as against such prior liens; and fifth, that receivers certificates, thus issued and in the hands of *bona fide* purchasers for value are entitled to priority in payment out of the proceeds of the sale of the property, upon which they are declared to be a first lien, as against other claimants upon the fund who dealt with the receiver after the entry of the order fixing the lien of certificates, and with full knowledge and notice thereof.

With respect to the position of the appellants, it is quite true that the statute gives right of reservation of title to goods and chattels sold, as security for unpaid purchase money, but that statute has strict application to goods and chattels. This Court, in numerous cases, has given construction to this statute, and the various provisions thereof. *McGinnis* v. *Savage,* 29 W. Va. 363; *Baldwin & Co.* v. *Wagner,* 33 W. Va. 293; *Hurxthal* v.

*Hurxthal,* 45 W. Va. 584; *Bank* v. *Hyer,* 46 W. Va. 13; *Hyer* v. *Smith,* 48 W. Va. 550; *Hatfield* v. *Haubert,* 51 W. Va. 190; *Hufford* v. *Akers,* 52 W. Va. 21; *Wagon Co.* v. *Hutton,* 53 W. Va. 154. The cases which have any special application to the facts in this case are *Hurxthal* v. *Hurxthal,* and *Bank* v. *Hyer.* In the *Hurxthal Case* the true equitable rule is said to be that stated ·in the case of *Binkley* v. *Forkner,* 117 Ind. 176, namely, that: "A chattel mortgage is effectual to preserve the character of the mortgaged chattels, as against a mortgage on the realty executed prior thereto, if the chattels can be removed without injuring or impairing the value of the real estate or the buildings thereon. If the detachment would occasion some diminution in the value of the realty, as it would have stood had the attachment not been made, then the depreciation must be made whole, and the rights of the parties adjusted according to the equity in the case." In that case the court says: "That the realty mortgagee's security is kept whole is all that he can ask, as against the property of third parties. When the mortgaged personal property is attached to the realty, the mortgagor has only an equity of redemption therein, to which the mortgage on the realty at once attaches." In that case the controversy was between the vendor' of certain mill machinery sold to replace other machinery removed, and the holder of a prior deed of trust. The decree below provided the special commissioner should sell the machinery separately, on the same terms as the realty, with privilege to the purchaser to remove it from the mill building, with as little damage thereto as possible. This court said the decree does not protect the realty mortgage from the damage that may accrue from a separate sale of the properties involved. The machinery and mill may both bring a better price, if sold together; and the mill may be greatly damaged, or may be benefitted, by the removal of the machinery. The court should have directed the commissioner to offer them for sale both separately and together, and sell in the way in which they would bring the larger sum. If together they bring a larger sum than when offered separately, the difference between the two sums will show the amount to which the realty mortgagee would be damaged by a separate sale, while the personal mortgagee would only be entitled to what the personal property would bring if sold separately, because such is the extent of his mort-

gage. The decree below was amended so as to direct the commissioner in making sale of said mill property to offer the same as a whole, also the mill and machinery separately, and to sell the same in which ever way it might bring the largest sum.

In *Bank* v. *Hyer,* the decree below specifically excepted from the sale certain mill machinery, to which it was claimed the title had been reserved by the vendor, the court saying, on the authority of the *Hurxthal Case:* "If the claim of Smith, Meyer & Schnier to retain title to the machinery sold by them to the Braxton Lumber & Coal Company had been properly presented to the court, it is likely that the exception found in the decree would have been proper, since machinery already under mortgage, which is annexed to the freehold, which freehold was already under mortgage, becomes part of the freehold, and therefore subject to the realty mortgage, if it cannot be severed without material injury to the freehold; yet, if it can be so severed, the owner of the mortgage on the machinery, or the purchaser under that mortgage, may remove it." Appellants did not even appeal from the decree confirming the sale, the sale was reported and confirmed without exception; and even if that decree had been appealed from, the title of the purchaser could not be disturbed. Section 4003, Code 1906. And if the case justified, the court could not now, as was done in the *Hurxthal Case,* reverse the decree of sale, or modify it so as to determine to what rights, if any, the appellants might have in the proceeds of the sale. In the Indiana case followed, an engine and boiler, shaft, pulleys, etc., were involved. The buyer represented that this machinery was to be installed upon leased land, and orally agreed that the same should be treated as personal property until the notes were paid. Emphasis is placed on the agreement that the machinery should be treated as personal property; for it is said: "When the parties immediately concerned, by an agreement between themselves, manifest their purpose that the property, although it is to be annexed to the soil, shall retain its character as personalty, then, except as against persons who occupy the relation of innocent purchasers without notice, the intention of the parties will prevail, unless the property be of such a nature that it necessarily becomes incorporated into, and a part of, the realty by the act and manner of annexation." In another place the Indiana case says: "The interests and

rights of the holder of a chattel mortgage upon property which is annexed to real estate upon which there is an existing mortgage, must be determined by the practical application of equitable principles to the rights of the respective parties." The elementary rule of the common law that whatever is annexed to the freehold becomes, in legal contemplation, a part of it, and is thereafter subject to the same incidents and conditions as the soil itself, is fully recognized in that case, although relaxation of that rule to meet the exigencies of modern trade is observed in some cases. Among the three requisites regarded as the true criterion of an immovable fixture by the Indiana court, the third is "the intention of the party making the annexation to make the article a permanent accession to the freehold."

In all the cases referred to we have none like the case at bar, involving the contract of a special receiver. If we look to the decree appointing the special receivers in this case, and to the manifest intention of the court and the parties engaged, we see plainly that in authorizing the issuance and sale of receivers certificates it was to build and complete the plant, and to employ the money thus derived in the work of original construction, and that the holders of receivers certificates should have a first lien upon the property then owned, as well as that to be thereafter acquired by the receivers. It is not to be presumed that the holders of receivers certificates would have invested their money in these certificates upon any other terms; they were looking forward to a completed plant for their security; this the appellants were bound to know at their peril; they did know; their contracts on the face of them manifest this; their evidence shows it, and although they undertook to reserve title to the machinery, can it be presumed that more was intended than that they should have some sort of security, subordinate, however, to the rights of the holders of receivers certificates?

The contracts of appellants do not therefore present an ordinary case of reservation of title to goods and chattels contemplated by the statute. They were dealing with receivers of the court, and notwithstanding the statute, were bound by the result of their action in selling them the property for original construction of the plant, to be subject to the liens of the receivers certificates, and under no circumstances to be removed to the detriment of the certificate holders or of other lien

creditors. This doctrine applicable to property furnished for original construction, is recognized and applied in *Porter* v. *Pittsburg Steel Co.*, 122 U. S. 267-283; followed in *Toledo &c. Railroad Co.* v. *Hamilton*, 134 U. S. 296-302. In the *Porter Case* title to a bridge reserved in the contract, was claimed. Justice Blatchford says: "Whatever is the rule applicable to locomotives and cars, and loose property susceptible of separate ownership and of separate liens, and to real estate not used for railroad purposes, as to their being unaffected by a prior mortgage given by a railroad company, covering after acquired property, it is well settled, in the decisions of this Court, that rails and other articles which become affixed to and a part of a railroad covered by a prior mortgage, will be held by the lien of such mortgage in favor of *bona fide* creditors, as against any contract between the furnisher of the property and the railroad company, containing stipulations like those in the contracts in the present case." This doctrine is applicable to other classes of property as well as to railroad property. *Patton* v. *Moore*, 16 W. Va. 428; *McFadden* v. *Crawford*, 36 W. Va. 671;. Jones on Mort., section 446, 451; *Hopewell Mills* v. *Taunton Bank*, 150 Mass. 519; *Phoenix Iron Works* v. *N. Y. Security &c. Co.*, 83 F. R. 757; *Evans* v. *Kister*, 92 F. R. 828; *N. Y. Security & Trust Co.* v. *Capitol Ry. Co.*, 77 F. R. 529.

Our own and other decisions all go to show that cases like the one at bar will be controlled by the equitable rights of the parties existing at the time, and that liens reserved by vendors of personal property attached to realty will be protected only when it can be done without detriment or injury to the existing rights of parties effected by the lien. It was for this reason that in the *Hurxthal Case* the Court modified the decree of sale entered below, and provided a means of ascertaining the equitable rights of the parties. If the facts called for it, the Court, for reasons already given, would be powerless to take that course in the present case.

In this case the Court made a promise, which should be redeemed, that the receivers certificates should constitute a first lien upon all the property, acquired and to be acquired, and to which prior creditors also subordinated their liens, and as was said by the court in *Kneeland* v. *Luce*, 141 U. S. 508: "Where such certificates are issued, and the court, as in this case, im-

presses upon them·a preferential lien, good faith requires that
its promise should be redeemed, unless, perhaps, it be shown that
the issue of the certificates was actually fraudulent." One of
the cases relied on in the Indiana case of *Binkley* v. *Forkner*,
*supra*, is *Campbell* v. *Roddy*, (N. J.) 14 Atl. Rep. 279. In that
case the vendor of an engine, boiler and machinery, knowing
that they were to be annexed to real estate took a chattel mort-
gage on them for a part of the price, but failed to register it.
The mortgagor of the chattels afterwards annexed them to real
estate, upon which he had already given a mortgage, and it was
held, four judges dissenting: "That the lien of the chattel
mortgagee would be protected so far as it would not diminish
the security which the real estate mortgagee would have had
if the annexation had not been made." But the court says in
that case, "Any property belonging to the mortgagor which he
chose to annex·to the mortgaged premises became realty. But
it is difficult to perceive any equitable ground upon which the
property of another which the mortgagor annexes to the mort-
gaged premises should inure to the benefit of a prior mortgagee
of the realty. The real estate mortgagee had no assurance, at
the time he took his mortgage, that there would be any acces-
sion to the mortgaged property. He may have believed that
there would be such an accession; but he obtained no rights,
by the terms of his mortgage, to a lien upon anything but the
property as it was conditioned at the time of its execution. He
could not compel the mortgagee to add anything to it. So long,
therefore, as he is secured the full amount of the indemnity which
he had taken, he has no ground for complaint. There is, there-
fore, no inequity towards the prior real estate mortgagee, and
there is equity towards the mortgagee of the chattels, in protect-
ing the lien of the latter to the full extent, so far as it will not
diminish the security of the former." But what are the facts
in the case at bar? The holders of receivers certificates were
induced to invest their money in them on a promise made by
the court acquiesced in by prior lienors, that they should be-
come a first lien on the property then owned, and that which was
to be thereafter acquired by the receivers in the construction
of a completed plant. The equities therefore are all with the
appellees, holders of the receivers certificates, and we must say
that the statute referred to giving a right to reserve title on

the goods and chattels, upon which appellants rely, cannot supersede the superior equities of certificate holders.

But had the receivers authority to enter into the contracts with appellants? Were the contracts illegal and void as decreed by the court? It is said the powers conferred were very broad, limited only by the terms of necessity and expediency; that it was necessary to have the machinery furnished by appellants, and that it was expedient to purchase the property on the terms of the contracts. If by these propositions it is intended to affirm that the receivers were empowered to make such contracts as might result in superseding or destroying the liens of certificate holders, decreed, on the faith of which purchasers thereof were induced to part with their money, the very statement of the propositions is sufficient to show their fallacy.

The most liberal view of the decree would not justify a construction so unjust and disastrous to certificate holders. The report of the receivers at the time of the decree estimated that, by the sale of $50,000.00, of receivers certificates, the plant could be completed and put in operation, and something be left for working capital. There was manifestly no intention, therefore, on the part of the court, or receivers, or of the parties to the suits, to authorize contracts for buildings, machinery, and plant beyond the $50,000.00. This was certainly the limit of the receivers authority to incumber the property of the corporation. It is not to be presumed that prior lien creditors would have waived their liens, in favor of purchasers of certificates, if the receivers had not been thus limited. It was not contemplated that either necessity or expediency would require contracts beyond the amount to be realized from the sale of certificates. The court, certainly did not intend, in so important a matter as retaining a lien on the property in which the money of certificate holders was to be invested, and on which their security would largely depend, to leave any thing for construction or implication. What authority was not plainly and unequivocally conferred it must be assumed was not intended to be given. A receiver is an officer of the court, and is not in any sense an agent or representative of either party to the cause; he is not such a general agent as to have any implied power; and a receiver can make no contract effectual against the trust, which is not first authorized, or subsequently ratified by the

court. *Mussey* v. *Beecher,* 3 Cush. 511; *McPherson* v. *Foster,* 43 Iowa, 48, 58; Alderson on Receivers, section 5; *Lehigh Coal &c. Co.* v. *Central R. R. Co. of N. J.,* 35 N. J. Eq. 426; *Chicago Deposit Co.* v. *McNulta,* 153 U. S. 554; *Glidden* v. *Strufer,* 52 Pa. 402; *Peoria Steam Marble Works* v. *Hickey,* 110 Iowa 276.

No knowledge of the making of these contracts was imparted to the court until long afterwards; but there is evidence that full information of the financial condition of the receivership was imparted to appellants; that they sold their machinery to the receivers, taking the chances of success, and of finally realizing the purchase money out of future earnings, manifested also by the credits given; besides the receivers in their report to the court showing their transactions with appellants, filed January 6, 1905, state that the deferred payments to appellants were to be met out of the earnings.

We need not hold the contracts with appellants absolutely void; for if the plans and purposes of the receivers had succeeded they no doubt would have been paid out of the profits, if not in that way, out of the proceeds of a sale of the property when sold, but subject to the rights of prior lienors; but certainly the contracts must be held void as liens prior to that of certificate holders.

The suggestion and argument is made here that although the receivers were without authority in the first instance, the court should so far ratify and confirm them now, as to protect and adjust the equities of the parties on the principles of the *Hurxthal Case.* But as we have seen, conceding the equities claimed by appellants, the court has not the power to modify the decree of sale, as was done in that case. This case, as already shown, is different from the *Hurxthal case,* in very material and controlling matters, and we do not think appellants have any equities superior to the certificate holders to be protected; for as it turns out these certificate holders will realize little more than half the money invested in them, their money having gone to appellants in part payment of the machinery. Besides, as argued by appellees, the rights of certificate holders are so far vested rights, that the court is as powerless to divest them, as it would be to displace any other prior lien without the consent of the lienor. 23 Amer. & Eng. Ency. 1121; *Fidelity Ins. Trust*

*&c. Co.* v. *Roanoke Iron Co.,* 68 F. R. 623; *Farmers' Loan & Trust Co.* v. *Grape Creek Coal Co.,* 50 F. R. 481; *Kneeland* v. *Loan Co.,* 136 U. S. 89; *Baltimore Bldg. & Loan Ass'n* v. *Alderson,* 90 F. R. 142; *Osborne* v. *Big Stone Gap Colliery Co.,* 96 Va. 58; *Mercantile Trust Co.* v. *Kanawha & O. Ry.,* 50 F. R. 874; *Farmers' L. & T. Co.* v. *Bank & Mer. Tel. Co.,* 148 N. Y. 315.

The record shows that in the case of Mackintosh, Hemphill & Co. they accepted the six thousand odd dollars paid them, knowing the money had been derived from the sale of certificates to appellees Watson and others; and in the case of The Hoovens-Owens-Rentschler Co., they actually subscribed for and took certificates in part payment, as the evidence goes to show, to make up the amount required to make the subscription binding on other subscribers. Having thus encouraged investment in these certificates, and of the proceeds thereof in their machinery, and consented to its permanent attachment to the plant of defendant company, we think they are now estopped from asserting the right of removal, or priority of payment out of the proceeds of sale of the plant. Those acts are inconsistent with their present contentions, and they must be regarded as having thereby waived any rights, if any, as against such certificate holders. "Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim." *Swain* v. *Seamens,* 9 Wall. 254-274; *Pokegama Lumber Co.* v. *Improvement Co.,* 96 F. R. 54.

It is suggested by appellant's counsel, that the appellees, the Watsons, fraudulently induced the making of the contracts by appellants; that colluding with Miller some scheme or plot was laid by them, for their private gain or profit. Nothing in the record justifies this suggestion. The record shows the decrees below denied them similar rights to those claimed by appellants; that they will realize only about half the money actually invested by them in receivers certificates, and that in no manner have they profited thereby, nor could they have profited thereby at the expense of appellants if the plans and purposes of receivers and litigants had succeeded.

For these reasons we are of opinion, after modifying the decree of December 15, 1905, to affirm the decrees appealed from.

*Modified and Affirmed.*