Nov. Term,
1857.

BLYSTONE
v.
BURGETT.

BLYSTONE *v.* BURGETT.

If personal property mortgaged in another state be removed into this state while yet in the rightful possession of the mortgagor, and here sold, the mortgagee cannot recover it from the purchaser, on condition broken, without pleading the statute of the state where the mortgage was made, to enable the Court to judge whether the instrument has been recorded in accordance with its provisions.

An admission by an innocent purchaser without notice that the mortgage was made in good faith, is sufficient to explain the badge of fraud implied by the mortgagor's possession; and if the mortgage were otherwise valid in this state, such admission would entitle the mortgagee to recover.

A chattel mortgage was unknown at common law; but if this were not so, the rule that the common law may be presumed to exist in a foreign state, so far as it is not modified by statute, is much shaken, if not overthrown, by late decisions.

Such a mortgage purporting to be executed in another state, cannot be presumed to have been executed in this state; nor can it be in any way affected by our laws until it has undergone some change under them.

This Court will give a chattel mortgage such effect as it is shown to be entitled to in the state where it is executed.

*Tuesday,*
*December* 29.

APPEAL from the *Tippecanoe* Court of Common Pleas.

STUART, J.—Complaint by *Blystone* against *Burgett* for the recovery of a yoke of oxen alleged to be unlawfully detained, &c. The defendant denied generally *Blystone's* right to the possession. Trial by the Court, and finding for the defendant.

The trial was had upon an agreed statement of facts. Both parties claimed title to the oxen from one *Yeatly.* It appears that on the 24th of *November*, 1854, *Yeatly* mortgaged to *Blystone* the oxen in controversy. The mortgage was executed in *Cumberland* county, *Illinois*, where both *Yeatly* and *Blystone* resided. The object of the mortgage, (including other property besides that claimed here,) was to secure a note of 375 dollars. There was no reservation of the possession of the mortgaged property in the mortgagor. The mortgage was recorded four days after its execution in the recorder's office of *Cumberland* county, and state of *Illinois*.

It is admitted in the agreed statement of facts that the mortgage was made in good faith between the parties.

The possession of the mortgaged property remaining in the mortgagor, *Yeatly*, he removed the oxen thus mortgaged from the state of *Illinois* to the state of *Indiana*, without the knowledge of *Blystone*, and there sold them to one *Cary*, without disclosing the mortgage, and *Cary* sold to the defendant *Burgett*. It is further agreed that demand was duly made after sale and before suit, and that the value of the oxen was 80 dollars.

And the only question is, which title shall prevail, that of the mortgagee in *Illinois*, or that of the purchaser in *Indiana?*

We are referred to the case of *Ingersoll* v. *Emmerson*, 1 Ind. R. 76, as a case in point in favor of the title of the mortgagee. But we think the distinction between the two cases is well defined. In the case in 1 Ind., *Gideon Halliday*, who sold the boat, was a mere bailee. The boat was mortgaged at *Cleveland, Ohio*, bailed to *G. H.* for a particular purpose, and while thus in his possession *G. H.* sold the boat at *Lafayette, Indiana*. It was held, that if the bailee of goods for a particular purpose, not having the indicia of property other than its possession and control, sell, in contravention of such purpose, to a *bona fide* purchaser without notice, the latter cannot resist the claim of the real owner.

But the case at bar is very different. The mortgagor, having never parted with the possession, nor made any stipulation to do so, drove the oxen beyond the jurisdiction of *Illinois*, and there sold them. In this case, the party assuming to sell was the mortgagor in possession. His possession was not for a special purpose. He was not a bailee. The mortgagee had no right of possession until condition broken; and it is doubtful whether he had then, without a judicial proceeding. *Yeatly* was still the owner in possession, and nothing in the mortgage provided how that possession should be taken from him.

Perhaps it would readily occur to any one, that as to innocent purchasers, or *bona fide* creditors without notice, the mortgage was fraudulent and void. But that is again removed by the admission of *Burgett*, himself an innocent

purchaser without notice, that the mortgage was executed in good faith. The badge of fraud which the possession of the mortgage implied could have been explained by evidence, showing the mortgage to have been a *bona fide* transaction. This is quite as effectually accomplished by the admission of *Burgett*. Suppose the mortgage to be otherwise valid in this state, *Burgett's* admission removed the only obstacle in the way of *Blystone's* recovery.

But it remains to be considered what effect is to be given to the *Illinois* mortgage. The statute of *Illinois* authorizing the mortgage of chattels, if there be any, is not pleaded. We cannot know judicially that there is such a statute. A chattel mortgage was unknown at common law.

Under some of the earlier decisions, we might indulge the presumption that the common law prevails in *Illinois*. Thus, in *Titus* v. *Scantling*, 4 Blackf. 89, it is said that the common law, so far as it does not interfere with the statutes of a state, must be presumed to be in force in such state. And the same presumption was indulged fifteen years earlier, in *Stout* v. *Wood*, 1 Blackf. 71. See, also, *Wright* v. *Delafield*, 23 Barb. 498. But this presumption of the prevalence of the common law in *Illinois*, destroys *Blystone's* title at once. For where there could be no chattel mortgage, *Blystone* acquired no title.

But this rule, presuming the existence of the common law in a sister state, is very much shaken, if not entirely overthrown, by the later authorities. See *Shaw* v. *Wood*, 8 Ind. R. 518, and the authorities there cited (1).

It is held by this Court, in *Franklin* v. *Thurston*, 8 Blackf. 160, that a mortgage sought to be foreclosed in this state must be presumed to have been executed here, until the contrary appears. And this doctrine is followed in *Hutchins* v. *Hanna*, 8 Ind. R. 533, and *Shaw* v. *Wood*, *id.* 518. But in neither of the instruments there in suit was the state mentioned on the face of the instrument. But here the mortgage purports to be executed in *Cumberland* county, in the state of *Illinois*, and to be acknowledged and recorded there. This cuts off all presumption as to the

place of its execution. We cannot contradict the face of the instrument by any presumption of its having been executed in this state, for the purpose of having our laws apply. In such case it can only be affected by the laws of *Indiana* after it has undergone some change under them. *Doe* v. *Collins*, 1 Ind. R. 24.

We have been referred by counsel outside of the case, who took an interest in the question, to 2 Hilliard on Mort. 412 to 416, 2 Spears, 556, and *Offut* v. *Flagg*, 10 N. H. R. 46. In Hilliard, there is a general review of the authorities on the question of chattel mortgages. We have not been able to find 2 Spears in the state library. The case of *Offut* v. *Flagg*, *supra*, is this: *Alanson Coon*, on the 30th of *May*, 1836, mortgaged to *Offut* a certain lot of personal property at *Lowell, Massachusetts*, at which place the parties then resided. The mortgage was given to secure 50 dollars on demand, and was duly recorded on the day of the date, in said *Lowell*, in conformity to the laws of *Massachusetts*. In *June*, 1837, *Coon* moved to *Nashua, New Hampshire*. In *October*, 1837, *Flagg* attached the mortgaged property for a debt contracted at *Nashua*. In *November* following, *Offut* demanded the mortgaged property of *Flagg*, who refused to deliver, &c. The mortgage was never recorded in *New Hampshire*, though *Offut* knew that *Coon* had left *Lowell, Massachusetts*.

On this state of facts, the question was submitted to the Court whether *Offut*, the mortgagee, was entitled to recover the property.

In examining the question, that Court in substance say that, being recorded where the parties at the time resided, the conveyance became legally a mortgage; that there was no provision of the laws of *New Hampshire* inconsistent with its validity; and that the moving of the property from one jurisdiction to another did not contravene any statutory provision. It was further said, that the law of *New Hampshire* was silent on the subject, and was not to be extended in its operation beyond the cases specifically provided for.

But this case is clearly distinguishable from that at bar.

Nov. Term, 1857.

The mortgage was duly recorded on the day of its date, in conformity to the laws of *Massachusetts*. That is the material point in the case. Had the laws of *Illinois* been brought judicially to the notice of the Court in this case, as they appear to have been in that, so that we could have said here as they said there, that the mortgage was recorded agreeably to the laws of *Illinois*, we should have had no difficulty in sustaining the validity of the mortgage (2).

So far as regards personal property, we are inclined to give a mortgage such effect as it is shown to be entitled to in the state where it was executed.

*Per Curiam.*—The judgment is affirmed with costs.

*W. C. Wilson*, for the appellant.

*G. S. Orth* and *J. A. Stein*, for the appellee.

(1) See 15 Maine R. 147.

(2) See *Barker* v. *Stacy*, 25 Miss. R. 471; *Ryan* v. *Clanton*, 3 Strobh. 411.