Cable Co. *v.* McElhoe—58 Ind. App. 637.

---

# THE CABLE COMPANY *v.* MCELHOE.

[No. 8,595.   Filed May 6, 1915.]

1. SALES.—*Contract Revesting Title in Seller.—Necessity for Delivery.*—Where there was an absolute sale and delivery of a piano, on which the purchaser executed a chattel mortgage to the seller to secure payment of the purchase price, by the terms of which the purchaser was prevented from moving the instrument from the place where it then was, the parties could thereafter prior to the interests of third persons being involved, contract with reference to its removal, and to that end cause the title to revest in the seller without an actual redelivery of the instrument, by the mere substitution of a contract of conditional sale in lieu of the one previously made. pp. 643, 644.

2. SALES.—*Sales Without Delivery.—Presumptions of Fraud.—Statutes.*—Under certain circumstances, in the absence of an immediate delivery, a sale of personal property is presumed to be fraudulent as against creditors under §7470 Burns 1914, §4911 R. S. 1881, and subject to the provisions of §7469 Burns 1914, §4910 R. S. 1881, requiring certain contracts for the sale of personal property to be in writing; but such presumption of fraud is not conclusive.   p. 644.

3. SALES.—*Conditional Sales.*—*Rights of Parties.*—A contract of sale by which the seller delivers the property sold, but retains title until the same is paid for, if the sale is not made for the purpose of consumption or resale, is enforceable not only as between the parties to it, but also against creditors of the purchaser and *bona fide* purchasers from him, and under such a contract the payment of the purchase money is a condition precedent to the vesting of title in the purchaser. p. 645.

4. CHATTEL MORTGAGES.—*Validity.*—*Law Controlling.*—Where the *situs* of the property covered by chattel mortgage is in a jurisdiction other than the domicile of the parties and the place of contract, the effect and validity of the mortgage in relation to the property covered will be determined by the law of the jurisdiction in which the property is situated, especially where the interests of third persons are involved, and if valid by such law, and recorded as required thereby, and the property is subsequently moved by the mortgagor to another jurisdiction, it will be enforced by the courts of the latter jurisdiction in the absence of a countervailing policy or statute. p. 645.

5. CONTRACTS.—*Construction.*—*Validity.*—*Law Controlling.*—With reference to the personal rights and obligations created by a contract it is to be construed and its validity determined under the laws of the State where executed, unless it can fairly be said that the parties at the time manifested an intention that it should be governed by the laws of another state, and if valid by such law it is valid everywhere, otherwise invalid everywhere. p. 646.

6. CONTRACTS.— *Construction.*— *Validity.*— *Law Controlling.* —The construction and legal effect of a contract concerning movable property may not only involve either the personal rights, duties and obligations of the parties, or the title to and interest in the subject-matter, or both, but may also depend either upon the law of the place where it was made, or of the place where it is to be performed, or upon the law of the *situs* of the property, according to the circumstances. pp. 647, 648.

7. SALES.— *Validity.*— *Law Controlling.*— *Conditional Sales.*— A sale of personal property, valid at the owners domicile, is valid everywhere, unless the property is at the time located in another state and the laws of the two jurisdictions are in conflict, and the rule applies to contracts of conditional sale. p. 648.

8. SALES.—*Contracts.*—*Validity.*—*Law Controlling.*—Where a conditional sale contract, in fact executed in Illinois, the domicile of the seller and the *situs* at the time of the property involved, appeared upon its face to have been executed in Indiana, and it was contemplated that the purchaser was at the time, or soon would be, domiciled in the latter State, to which the property was about to be removed by him, and that the conditions of the contract were

to be performed in accordance with the laws of the latter State, its force and effect must be determined as that of a contract governed by the laws of Indiana. pp. 649, 650.

9. EVIDENCE.—*Parol Evidence.—Admissibility.—Contracts.*—Parol evidence is admissible to rebut the presumption that the *lex loci contractus* governs, where it does not contradict or vary the terms of the contract. p. 650.

10. CONTRACTS.—*Construction.—Law Controlling.—Intent of Parties.* —Except where the parties are actuated by fraud, their intention, either express or implied, will be given effect in determining by what law the contract is governable. p. 650.

11. CONTRACTS. — *Construction. — Law Controlling. — Evidence.* — Where a contract apparently executed in Indiana for the conditional sale of personal property at the time in Illinois, was in fact executed in Illinois, and it was contemplated thereby that the property was to be removed to Indiana, which state was then, or was about to become the domicile of the purchaser, the fact that the contract was invalid by the law of Illinois, if true, affords evidence that the parties intended it to be controlled by the law of Indiana, since no contract is to be held invalid if by a reasonable construction it can be made consistent with the law. p. 650.

12. STATUTES.—*Laws of Other States.—Judicial Notice.*—Generally a state court is not chargeable with knowledge of the laws of another state, but the existence of such laws is a fact to be proved, so that conclusions of law based on the existence of certain laws in another state, in the absence of proof upon the subject, were not sustained by the evidence. p. 652.

13. TRIAL.—*Findings.—Conclusions of Law.*—Conclusions embodied in the finding of facts, which can not be arrived at without the application of abstract principles of law to the facts, are in the nature of conclusions of law and afford no element of strength to the finding. p. 653.

From Warren Circuit Court; *Burton B. Berry,* Judge.

Action by The Cable Company against Harry McElhoe. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Stansbury & Billings* and *J. W. Whicker,* for appellant. *Charles R. Milford,* for appellee.

CALDWELL, P. J.—Appellant brought this action in replevin to recover from appellee the possession of a piano, hereinafter described. Judgment was rendered in favor of appellee, pursuant to conclusions of law stated on a special

finding. The questions of the sufficiency of the evidence to sustain the decision, and of the correctness of the conclusions of law are properly presented. The material facts, as shown by the evidence are substantially as follows: January 4, 1908, appellant sold and delivered to Charles T. Delmar, at his residence in Bloomington, Illinois, a Wellington piano, described as "style A, mahogany, numbered 109165," for the agreed price of $200, of which Delmar paid $5 in cash. At the time of the purchase, Delmar executed to appellant at Bloomington a chattel mortgage on the piano, to secure the payment of the balance of the purchase money at appellant's place of business in Chicago, Illinois, in monthly payments of $5. The mortgage contained a number of conditions, on the breach of any of which, appellant was authorized by the terms of the mortgage to declare the debt due, and to repossess itself of the piano and sell it for the purpose of collecting the balance of the purchase money, or to foreclose the mortgage to that end. Among such conditions was one to the effect that Delmar should not move the piano from Bloomington without appellant's written consent. The mortgage was not acknowledged or recorded. After its execution and before the maturity of the first monthly installment, Delmar went to Attica, Indiana, apparently for the purpose of living there indefinitely, leaving his wife and the piano temporarily at Bloomington. Delmar being desirous of moving the piano to Attica, but restricted by the provisions of the mortgage, negotiated with appellant, and arrived at an agreement that the piano might be moved, provided. Delmar executed an Indiana contract to take the place of the mortgage. Thereupon, Delmar by letter authorized his wife to execute such a contract for him, which she did. The contract was delivered and accepted by appellant, and is headed "Attica, Indiana, Jan. 31, 1908," and is signed "Charles F. Delmar, per Mrs. Mabelle A. Delmar, address Attica, Indiana." The contract was in fact signed and delived at Bloomington, Illinois. It recites in

substance that Delmar received from appellant, under conditional contract of sale, as recited in the contract, "one Wellington, style A, mahogany, number 109165," the contract price being $200, of which he had paid $5, January 4, 1908, and the balance of which he agreed to pay in monthly installments of $5, payments to be forwarded to appellant at Chicago, by money order, registered letter or draft, "or payable on presentation of this contract at ——, State of Indiana, when due, without notice, waiving all valuation and appraisement laws of the state of Indiana or the United States." The contract contained the following further provision:

"The above described instrument continues to be the property of the said The Cable Company, notwithstanding said delivery, and no title to or interest in said instrument shall pass or be vested in myself, except upon or after the full payment of this obligation, and until such payment in full, the said, The Cable Company shall retain the unqualified ownership of said instrument. In the event that any of the above payments shall not be paid as they become due, I agree to surrender, redeliver and return the said instrument * * * to the said, The Cable Company * * *. And I agree not to sublet or part in anywise with the possession of said instrument, without the written consent of the said The Cable Company. Upon payment in full of the above sum aforesaid, the said The Cable Company agrees to make a bill of sale of said instrument, without any additional charge therefor, and said instrument shall then become the property of the undersigned."

It was agreed between appellant and Delmar that the chattel mortgage should become void on the execution of the contract. Notwithstanding the defect in the description, the property described by the contract is sufficiently identified. After the execution of the contract, Delmar caused the piano to be moved to his home at Attica, Indiana. Subsequently he became indebted to J. Frank McDermond, a merchant, in the sum of $67.56 for goods bought from his store, and thereafter, on May 19, 1909, being about to move

from Attica, he executed to McDermond a note in said sum, and a chattel mortgage on the piano to secure it. This mortgage is in the usual form, and contains the following provision: "It is understood that this bill of sale is junior to a bill of sale heretofore executed on the same." The piano was delivered into the possession of McDermond on the execution of the mortgage, and thereafter, on July 16, 1910, he sold it, pursuant to the terms of the mortgage, to appellee, for a sum sufficient so that after paying McDermond's claim and the expenses of the sale, there was an overplus of $23.14, which was paid to Delmar through his attorney. There was due appellant from Delmar on said contract about $134 when this action was commenced.

The foregoing facts shown by the evidence are included substantially in the finding. In addition the court found that McDermond did not have actual notice or knowledge of the existence of either of said writings executed to appellant; and that appellant did not take possession of said instrument after it was delivered to Delmar, January 4, 1908, and before the execution of the contract dated January 31, 1908. The finding contains the following additional matters stated as facts: Specifications Nos. 14 and 15 that the instruments dated January 4 and 31, 1908, respectively are chattel mortgages; Nos. 16 and 19, that under the laws of Illinois, the chattel mortgage dated January 4, by reason of its not having been recorded is void as against subsequent *bona fide* purchasers and creditors, even if they had actual notice and knowledge of the same; No. 17, that according to the laws of the state of Illinois, the instrument dated January 31, 1908, is void, because not recorded; and No. 20, that under such laws, the instrument is void as to subsequent *bona fide* purchasers and creditors, even if they had actual notice of the same; No. 18, that under such laws as they were, January 31, 1908, and since, a conditional sale of property whereby the title of the vendor is reserved and retained in him until the purchase price is paid is void as against sub-

sequent *bona fide* purchasers and creditors, whether recorded or not. The laws of Illinois claimed to be applicable were not pleaded, proven or included in full or in substance in the findings. The conclusions of law are to the effect that at the commencement of the action appellee was the owner and in possession of the piano; that appellant take nothing by the action, and that appellee recover costs.

There is no controversy that the transaction of January 4, 1908, amounted to a sale, and that thereby the title to the piano vested in Delmar. The instrument executed that day, conceded to be a chattel mortgage, created or reserved in favor of appellant a lien on the piano to secure the payment of the balance of the purchase money, and also placed some restrictions on Delmar respecting his control of the instrument. Among such restrictions was the condition prohibiting the removal of the piano from Bloomington. Eventually it suited Delmar's convenience to remove it to Indiana, but such condition obstructed him in carrying out his purpose. The situation then arising was one respecting which the parties might contract. Thereupon, and before the interests of third persons became involved, in consideration that appellant would surrender the advantages that it had by virtue of said condition and others contained in the chattel mortgage, Delmar was willing to and did execute the contract of January 31, superseding the chattel mortgage. This contract specified that the title should remain in appellant until the piano was paid for. There is no reason why appellant and Delmar may not have entered into a valid contract after the transaction of January 4, by which the title to the piano should revest in appellant. In order that the title might so revest under such a contract, an actual delivery of the piano to appellant would not have been necessary. A sale of personal property may be complete so as to pass title without a delivery. *Leffler* v. *Watson* (1895), 13 Ind. App. 176, 40 N. E. 1107, 41 N. E. 467; *Bertelson* v. *Bower* (1882), 81 Ind.

512. These observations, however, are subject to the provisions of the statute to the effect that a sale of personal property in the absence of an immediate delivery is presumed to be fraudulent as against creditors under certain circumstances (§7470 Burns 1914, §4911 R. S. 1881), and subject also to certain provisions of the statute of frauds, requiring contracts for the sale of personal property under certain circumstances, to be in writing. §7469 Burns 1914, §4910 R. S. 1881. Such presumption, however, is by no means conclusive, and the statute of frauds is not applicable here. It may be said also that there is nothing to indicate that in the transaction of January 31 the parties were actuated by any purpose other than an honest one. Having repurchased the piano, appellant might have then sold it to Delmar, reserving title. The parties here, however, attained the result of the two transactions, by means of one. That is, by the contract of January 31, appellant accomplished the equivalent of repurchasing the piano and reselling it to Delmar by what is sometimes designated a conditional sale, and the contract being supported by a sufficient consideration, as indicated, we know of no principle of law that impeaches such contract if made in good faith and pursuant to an honest purpose. On this subject, the following language is used in *Cooper* v. *Payne* (1905), 103 App. Div. 118, 93 N. Y. Supp. 69, where a contract by which the vendor of personal property reserved title until purchase money should be paid was substituted in place of a contract of absolute sale: "Whatever may have been the legal status of the parties prior to the execution of this paper is unimportant, for the vendor and purchaser had a right, if they saw fit, to change their positions; and thereupon the plaintiff became a conditional vendor, and the defendant a conditional vendee and the transaction a conditional sale." This case was reversed by the court of appeals, but on grounds not affecting the proposition indicated in the quotation. See *Cooper* v.

*Payne* (1906), 78 N. E. 1076. The following cases on first view seem to militate somewhat against our conclusion, but in each of them the circumstances were different from those presented here. *Hyer* v. *Smith* (1900), 48 W. Va. 550, 37 S. E. 632; *Van Winkle & Co.* v. *Crowell* (1892), 146 U. S. 42, 13 Sup. Ct. 18, 36 L. Ed. 880; *Houser & Haines Mfg. Co.* v. *Hargrove* (1900), 129 Cal. 90, 61 Pac. 660. In

3. many of the jurisdictions of the United States, a contract such as that dated January 31, is enforceable not only as between the parties to it, but also in the ordinary case as against creditors of the vendee and *bona fide* purchasers from him. Under such a contract the payment of the purchase price is a condition precedent to the vesting of title in him. *Dunbar* v. *Rawles* (1867), 28 Ind. 225; *Plummer* v. *Shirley* (1861), 16 Ind. 380; *West* v. *Fulling* (1905), 36 Ind. App. 617, 76 N. E. 325; *Tufts* v. *D'Arcambal* (1891), 12 L. R. A. 446, note; *Weinstein* v. *Freyer* (1891), 12 L. R. A. 700, note. The Indiana rule is thus expressed: "Where the owner of personal property sells and delivers it to a purchaser, not for the purposes of consumption or resale, at an agreed price payable at a future day, upon the express condition and agreement that the title to such property should remain in the vendor thereof until the purchase price was fully paid, the vendee of such property, prior to such payment can neither sell nor encumber the property in such manner as to defeat the title of the original owner and vendor thereof." *Winchester Wagon Works, etc., Co.* v. *Carman* (1887), 109 Ind. 31, 34, 9 N. E. 707, 58 Am. Rep. 382.

Turning next to the question of the conflict of laws, as we view the case, this question in its relation to the chattel mortgage of January 4, is not of primary importance,

4. for the reason that such chattel mortgage, is only incidentally involved, and in addition, the *situs* of the property, the place where the contract was made and was to be performed, and the domicile of the parties were one

and the same place, all being in Illinois. It would, therefore, seem apparent that such instrument was governed by the law of Illinois, but as the question of the relative importance of such elements may bear some relation to matters involving the contract of January 31, we call attention that it seems to be the rule, especially where the interests of third persons are involved, that the construction, effect and validity of a chattel mortgage in its relation to the property thereby mortgaged, are determined by the law of the jurisdiction wherein the property is situated at the time of the execution of the mortgage, where the *situs* of the property is in a jurisdiction other than the domicile of the parties and the place of contract. Under such circumstances if the mortgage is executed and recorded as required by the *lex situs,* and if valid by such law, it will be enforced by the courts of the jurisdiction to which the property is subsequently moved by the mortgagor, in the absence of some countervailing statute or policy of the latter jurisdiction. *Ames Iron Works* v. *Warren* (1881), 76 Ind. 512, 40 Am. Rep. 258; *Blystone* v. *Burgett* (1857), 10 Ind. 28, 68 Am. Dec. 658; *Fowler* v. *Bell* (1896), 90 Tex. 150, 37 S. W. 1058, 59 Am. St. 787, 39 L. R. A. 254; *Snider* v. *Yates* (1904), 64 L. R. A. 353, note; *Adams* v. *Fellers* (1911), 35 L. R. A. (N. S.) 385, note; 5 R. C. L. 987. However, the important instrument is the contract of January 31, construed by us to be a conditional sale, rather than a chattel mortgage. That is, it is a contract of conditional sale in the sense that title was reserved by its terms to vest only on payment of the balance of the purchase money. We proceed to determine whether such contract is governed by the laws of Illinois or Indiana.

*Prima facie,* it would seem that this question presents but little difficulty, since the contract was executed in Illinois, involving property then in that state, thereby being sold conditionally by a vendor domiciled there. On a further examination, however, there is more diffi-

culty. We therefore give some attention to the question of the *situs* of the property, not that it is necessarily controlling, but for the reason that the parties contemplated its immediate removal to Indiana. The following general principles are laid down in *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 681, 74 N. E. 523, 108 Am. St. 324, 69 L. R. A. 870, relative to the conflict of laws in transactions involving contracts: "A contract must be construed and its validity determined under the laws of the state where it is executed, unless it can be fairly said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state. * * * If a contract is valid in the state where it is executed, it is valid everywhere." It follows also that where the *lex loci contractus* is applicable, a contract that is invalid where executed is invalid everywhere. Any contract may present itself for construction in either of two aspects, perhaps both. Thus, it may involve the personal rights, duties and obligations of the parties to it, under its terms, or it may relate to the title to or interest in property transferred or reserved by it. These distinctions are important in determining questions of the conflict of laws. In the case last cited, the court has reference to the personal rights and obligations created by contract. By way of illustration, where a deed is executed in one state conveying land situate in another state, the law of the former determines whether it contains covenants of seizin or other personal covenant, while the law of the latter determines whether it passes any title. *Bethell* v. *Bethell* (1876), 54 Ind. 428, 23 Am. Rep. 650; Bishop, Contracts §1394; *Succession of Welsh* (1904), 64 L. R. A. 823, note. The reason for the distinction is that the former question involves the person and the latter the thing. In *Ames Iron Works* v. *Warren, supra,* a case involving rights in property, the Supreme Court recognizes the rule that under some circumstances, the *lex situs* is controlling, in questions relating to

personal property. In that case is a quotation from *Clark* v. *Tarbell* (1877), 58 N. H. 88, as follows: "If a foreigner or a citizen of another state send his property within a jurisdiction different from that where he resides, he impliedly submits it to the rules and regulations in force in the country where he places it. What the law protects, it has a right to regulate. And if two persons in another state choose to bargain concerning property which one of them has in a chattel not within the jurisdiction of the place, they cannot expect that the rights of persons in the country where the chattel is will be permitted to be affected by their contract." This language was used in a case where the *situs* of the chattels mortgaged was in New Hampshire while the domicile of the mortgagor was in another state, the mortgage having been executed in conformity to the law of the latter. See, also, 5 R. C. L. 928. There does not occur to us any reason why the foregoing rules should not apply to contracts of conditional sale, for such seems to be the general rule where the *situs* of the property involved is not the same place as the domicile of the parties and the place of contract. Thus, the general rule is that if the transfer or disposition of personal property is valid at the owner's domicile, it is valid everywhere. An exception is where the *situs rei* at the time of the contract is another state, and the laws of the two jurisdictions are in conflict. The general rule is based on the fiction of law that the domicile of the owner draws to it the personal estate which he owns whatever may happen to be its real *situs*. This fiction, however, "yields whenever it is necessary for the purposes of justice that the actual *situs* of the thing should be examined." *Green* v. *Van Buskirk* (1869), 7 Wall. 139, 19 L. Ed. 109, 113. Again it is said the validity, construction and legal effect of a contract may depend either upon the law of the place where it is made or of the place where it is to be performed, or if it relates to movable property, upon the law of the *situs* of

the property according to the circumstances.    See generally:
*Weinstein* v. *Freyer* (1891), 12 L. R. A. 700, note; *Warnken
& Co.* v. *Langdon Merc. Co.* (1898), 8 N. Dak. 243; *Drew*
v. *Smith* (1871), 59 Me. 393; *Holt* v. *Knowlton* (1894), 86
Me. 456, 29 Atl. 1113; *Harper* v. *People* (1892), 2 Colo.
App. 177, 29 Pac. 1040; *Baldwinn* v. *Hill* (1897), 4 Kan.
App. 168, 46 Pac. 329; *Dorntee Casket Co.* v. *Gunnison*
(1897), 69 N. H. 297; *Hornthall* v. *Burwell* (1891), 13 L.
R. A. 740, note; note to *Adams* v. *Fellers, supra.*

In the case at bar, the *situs* of the involved property was
in Illinois at the time of the execution of the contract of
January 31.   In addition the contract was executed
in Illinois, and the vendor was domiciled there.
*Prima facie,* the conclusion is that the contract would
be governed by the law of that state.   However, there are
other facts to be considered.    As indicated, appellant speci-
fied as a condition to the removal of the piano, the execu-
tion of an Indiana contract to supersede the chattel mort-
gage.    The contract was therefore executed in contempla-
tion that Attica, Indiana, should immediately become the
*situs* of the property and expressly to that end.    In har-
mony with such purpose the contract bore the heading of
"Attica, Indiana", and that place was named in the con-
tract as the address of the vendee, and reference was made
therein to the valuation and appraisement laws of Indiana,
by way of excepting the contract from their operation.    The
parties thereby, at least by a strong implication, indicated
an intention to contract with reference to the laws of In-
diana.    The contract recognized that the vendee was already,
or at least soon to be domiciled in Indiana, and consequently
that he should perform the conditions and covenants of the
contract in that State, including the payment of the pur-
chase money, in the sense that it was to be transmitted from
Indiana through the United States mail.    See *Thomas* v.
*Wentworth Hotel Co.* (1910), 158 Cal. 275, 110 Pac. 942;
*Beggs & Co.* v. *Bartels* (1900), 73 Conn. 132, 46 Atl. 874,

84 Am. St. 152. Some of these facts rest in parol, but in such cases parol evidence is admissible to rebut the presumption that the *lex loci contractus* governs, where such evidence does not contradict or vary the terms of the contract. The courts admit such testimony without hesitancy to show that a contract headed and dated at one place was in fact executed at another. In the case at bar, the presumption from the face of the contract is that it was executed in Indiana. That it was executed in Illinois could only be and actually was established by parol evidence. See, Bishop, Contracts §1392; *Cox* v. *United States* (1832), 6 Pet. 172, 8 L. Ed. 359, 370; *Bell* v. *Bruen* (1843), 11 L. Ed. 89, note; *Southern R. Co.* v. *Harrison* (1898), 119 Ala. 539, 24 South. 552, 72 Am. St. 936, 43 L. R. A. 385; *Coghlan* v. *South Carolina R. Co.* (1891), 142 U. S. 101, 12 Sup. Ct. 150, 35 L. Ed. 951, 954. We are, therefore, forced to the conclusion that the contract of January 31, is governed by the law of Indiana. Such, we are convinced, was the intention of the parties. In arriving at this conclusion, we assign some weight among other circumstances indicated, to the fact that the property was to be brought to Indiana. The intent in such cases, either express or implied, will be given effect, except where the parties are actuated by fraud. 5 R. C. L. 938. It is a principle of universal law that "in every forum a contract is governed by the law with a view to which it was made." *Wayman* v. *Southard* (1825), 10 Wheat. 1, 6 L. Ed. 253; *Pritchard* v. *Norton* (1882), 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104, 108.

Appellee, without citing authorities, argues that such contract is void under the law of Illinois, and assuming that it is governed by such law, bases his defense upon that fact. If such a contract is void by the law of Illinois, it affords an additional argument in favor of the proposition that it is governed by the law of Indiana. If void by the law of Illinois, it will be presumed that the

parties were informed of that fact. It would follow that it was executed in violation of law or contrary to the policy of the law. If it is an Indiana contract it is recognized by law as valid. Therefore, to interpret the contract as governed by the law of Illinois would result in rendering it void. In support of the proposition that such a situation should weigh in favor of construing the contract as governed by the law of Indiana, the Supreme Court in *Garrigue* v. *Kellar, supra,* quoting from *Bell* v. *Packard* (1879), 69 Me. 105, 31 Am. Rep. 251, said: "No contract must be held as intended to be made in violation of law, whenever, by any reasonable construction, it can be made consistent with the law, and which it was competent for the parties to adopt." In *Pritchard* v. *Norton, supra,* the United States Supreme Court in discussing questions of conflict between the *lex fori* and the *lex loci solutionis,* quotes the following from 4 Phillimore, Int. Law 470: "As all the foregoing rules rest upon the presumption that the obligor has voluntarily submitted himself to a particular local law, that presumption may be rebutted, either by an express declaration to the contrary, or by the fact that the obligation is illegal by that particular law, though legal by another. The parties cannot be presumed to have contemplated a law which would defeat their engagements." See, also, *Fisher* v. *Commonwealth* (1912), 44 L. R. A. (N. S.) 435, note 437; *Dunn* v. *State* (1888), 82 Ga. 27, 8 S. E. 806, 3 L. R. A. 199; *Hamilton* v. *Schlitz Brew. Co.* (1905), 129 Iowa 172, 105 N. W. 438, 2 L. R. A. (N. S.) 1078; Bishop, Contracts §392; 9 Cyc. 586. We do not determine the validity of the contract if governed by the law of Illinois, but see *Gilbert* v. *National, etc., Co.* (1898), 176 Ill. 288, 52 N. E. 22; *Hooven, etc., Co.* v. *Burdette* (1894), 153 Ill. 672, 39 N. E. 1107.

Directing our attention to the court's finding, it will be observed from our abstract above set out that the court based the truth of certain propositions found as facts on the law of Illinois. We have indicated that the law of Illi-

nois was erroneously applied to this case, but we have this further observation to make. Subject to certain exceptions, not applicable here, a state court is not chargeable with knowledge of the laws of another state. Such laws are classed as facts and must be proved, as such, and ordinarily must be brought to the attention of the domestic court by a proper pleading. Specifications of the finding, numbered 16, 17, 18, 19 and 20 are based on the law of Illinois. They are material. No evidence was offered respecting such laws, their existence or provisions. It follows that the decision is not sustained by the evidence. *Wabash R. Co.* v. *Hassett* (1908), 170 Ind. 370, 377, 83 N. E. 705. For method of proof see §§470, 473, 490, 499, 500 Burns 1914, §§454, 457, 468, 476, 477 R. S. 1881. The law of a sister state when involved in a controversy in the state of the forum must be proven as a fact in the sense that its existence and provisions must be so proven. That there is a law of the sister state, and what it is must be proven. The application of such law to a particular controversy, and the effect of such application is for the court. "The court are, therefore, to decide what is the proper evidence of the laws of a foreign country, and when evidence is given of those laws, the court are the judge of their applicability, when proved, to the case in hand." 1 Greenleaf, Evidence §486; Story, Conflict of Laws §638. "The construction of foreign statutes, as in the case of other written instruments, is a question for the court, and not one for the jury." 36 Cyc. 1103. "But the rule that the *fact* of a foreign law must be proved to a jury like any other fact, while questions of competency and of construction are for the court, is that which everywhere obtains." 1 Wharton, Evidence §303. See, also, *Wabash R. Co.* v. *Hassett, supra; Tyler* v. *Kent* (1876), 52 Ind. 583, 585; *Milligan* v. *State, ex rel.* (1882), 86 Ind. 553; *Wilson* v. *Clark* (1858), 11 Ind. 385; *Buchanan* v. *Hubbard* (1889), 119 Ind. 187, 21 N. E. 538.

With these principles in mind, we proceed to consider

from another viewpoint certain specifications of the court's finding, and especially those numbered 15, 16, 17, 18, 13. 19 and 20. In a general way these specifications are to the effect that the contract of January 31 is a chattel mortgage, rather than a contract of sale, reserving title, and that such contract and the chattel mortgage of January 4 are void, and void as to certain classes of creditors, as hereinbefore more specifically set out. The conclusions embodied in such specifications are neither evidentiary nor ultimate facts, as they could not be deduced from the evidence, or from an analysis of the evidence, through an exercise of reasoning faculties. To arrive at such conclusions necessitates the application of abstract principles of law to the facts. They are therefore, in the nature of conclusions of law, and being stated as facts, they afford no element of strength to the finding. *Lagler* v. *Roch* (1914), 57 Ind. App. 79, 104 N. E. 111; *Dodge Mfg. Co.* v. *Kronewitter* (1914), 57 Ind. App. 190, 104 N. E. 99. The matters of such specifications are material, as they form the basis of the conclusions stated as such by the court. It follows that the court erred in its conclusions of law.

For errors indicated, the judgment is reversed, with instructions to sustain the motion for a new trial, and for further proceedings in harmony with this opinion.

Note.—Reported in 108 N. E. 790. As to parol evidence to add to or vary a writing, see 56 Am. St. 659. As to the law governing conditional sales, see 64 L. R. A. 833. As to the necessity of recording instrument creating a lien or reserving title to personal property, in state to which property is subsequently removed, see 35 L. R. A. (N. S.) 385. See, also, under (1) 35 Cyc. 665; (2) 20 Cyc. 536; (3) 35 Cyc. 677, 680, 671, 667; (4) 6 Cyc. 1060; (5) 9 Cyc. 672; (6) 9 Cyc. 681; (7, 8) 35 Cyc. 666; (9) 17 Cyc. 712; (10) 9 Cyc. 665, 666; (11) 9 Cyc. 672, 586; (12) 16 Cyc. 893; 36 Cyc. 1252; (13) 38 Cyc. 1978.