## SWAIN ET AL. v. SCHILD.

[No. 9,401.   Filed December 12, 1917.]

1. SALES.—*Conditional Sales.—Contracts.—Validity.—Law Controlling.*—The construction and validity of a conditional sale contract, executed in Kentucky by persons domiciled there, and by its terms to be performed there, and covering property situated in such state, should be determined by the law of Kentucky, if properly brought to the court's attention, though the action involving the construction of the contract is brought in Indiana. p. 161.

2. STATUTES.—*Foreign Laws.—Necessity of Pleading.*—In an action in this state involving the rights of the parties under a conditional sale contract executed in Kentucky and to be performed there, in order that the laws of Kentucky might be applied, they should have been pleaded and proved as facts, and, on failure to do so, the common law, as interpreted in Indiana, governed. p. 161.

3. SALES.—*Conditional Sales.—Contracts.—Validity.*—Under the common law, as interpreted and applied in this state, a sale of personal property on condition that the title shall remain in the seller until the purchase price is paid, is valid, and the seller retains ownership though he delivers possession to the purchaser. p. 161.

4. SALES.—*Conditional Sales.—Violation of Contract.—Remedies of Vendor.*—Where, under a conditional sale contract, the purchaser defaults in payment, or violates the conditions of the contract, the seller may enforce payment in full, or at his election peaceably repossess himself of the property, and apply the payments made as rent for the use of the property.   p. 162.

5. SALES.—*Conditional Sales.—Violation of Contract.—Waiver.*—Even though removal of a piano by the purchaser to another state

Swain v. Schild—66 Ind. App. 156.

constituted a breach of a conditional sale contract, the vendor waived it by afterwards recognizing the contract as in force. p. 162.

6. SALES.—*Conditional Sales.—Breach of Condition.—Waiver.*— Where, under a contract of conditional sale, the seller, after the buyer had defaulted in payments, wrote to him that payment would be accepted at any time up to a certain date, the buyer, even though this did not amount to a valid extension of the time of payment, was led to believe that possession of the property would not be taken on default in payment prior to the time named in the letter, and the seller thereby waived all right to forfeit the buyer's rights for nonpayment until the expiration of the time so named. p. 162.

7. SALES.—*Conditional Sales.—Breach of Condition.—Right to Retake Possession.*—Under a contract of conditional sale of a piano providing that, if the buyer should sell or remove the instrument from his residence, or should attempt to sell or dispose of it, or attempt to remove it, without the written consent of the seller, or if the seller should feel unsecure or unsafe, he should have the right, without notice or demand, to take immediate possession, and that the buyer insure the instrument against loss by fire, where the buyer removed his residence to another part of the city in which he was then living, delivered the piano to a neighbor under an arrangement by which the neighbor expected to trade for it, and the seller by mere accident located the piano in the neighbor's possession and feared that the insurance, because of the arrangement with the neighbor, had become voidable, he was justified in taking possession. p. 163.

8. SALES.—*Conditional Sales.—Breach of Condition.—Seizure of Property by Seller.—Right of Buyer to Recover Possession.*— Where a piano was sold under a conditional sale contract, even though the seller, after waiving the buyer's default in payment by notifying the buyer that payment would be accepted up to a certain date, had no right to take possession, or, having taken possession and notified the buyer that the time for completing his payments had been extended for a specified period, it had no right to hold such possession, the buyer could not recover possession of the piano after the time limit for completing payments, as well as extensions thereof, had expired, without showing payment or tender of the amount due under the terms of the contract. p. 164.

From Marion Superior Court (99,253); *Theophilus J. Moll*, Judge.

Action by Herman Schild against Lemmon E. Swain and others. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Edgar A. Brown,* for appellants.
*M. L. Clawson* and *F. S. LaMonte,* for appellee.

CALDWELL, J.—The sole question presented by this appeal is the sufficiency of the evidence to sustain the decision. The evidence was in substance as follows: Appellee executed to F. M. Tiller a certain contract dated at Louisville, Kentucky, September 3, 1912, by which he agreed to pay to the latter at his office in Louisville $650 as follows: $325 by the delivery of a piano to be taken at that price, balance $10 per month, with interest on the deferred payments at six per cent. The contract recited that the consideration for appellee's agreement to pay was Tiller's agreement to sell and deliver to him a certain Kimball player piano, the use of which Tiller agreed to let to appellee temporarily on terms substantially as follows: That the instrument should remain Tiller's property until payment in full; that in case appellee should make default in paying the installments, or any of them, or should sell or remove the instrument from his residence in Louisville, or should attempt to sell or dispose of it, or attempt to remove it as aforesaid, without the written consent of Tiller or assigns, or if Tiller should feel insecure or unsafe, then Tiller or assigns should have the right, without notice or demand, to take immediate possession of the instrument, and in case of the exercise of such right, all payments on the purchase price should become the property of Tiller or assigns in consideration of the use or rental of the instrument while in appellee's possession, provided that Tiller

or his assigns were authorized at their election to enforce payment, whereupon, payment being complete, title should vest in appellee.  Appellee agreed also to insure the instrument against loss by fire for the benefit of Tiller or assigns.

Tiller at the time of the execution of the contract was in fact the agent of the W. W. Kimball Company of Chicago and, contemporaneously with its execution, he indorsed it to such company.  Tiller delivered the player piano to appellee, who thereupon delivered to Tiller the piano mentioned in the contract, accepted as a payment of $325 on the purchase price of the player.  Appellee thereafter paid on the balance of the purchase price $230, the last payment having been made in December, 1914.  He made no further payments.  There remained unpaid $95 and interest under the contract.  Some time after executing the contract appellee moved to Indianapolis, taking the player piano with him.  Prior to April 14, 1915, he wrote to Tiller that he would be able to pay the full balance by May 1, 1915.  Under date of April 14, 1915, Tiller responded that payment would be expected by the date named.  At some time prior to April 27, 1915, appellee moved from his residence on Cooper street to some other portion of the city, leaving the player piano in the possession of Ginsberg, a neighbor living near his former residence, as he did not have room for it in his new residence.  He had an arrangement with Ginsberg, however, that if he completed his payments Ginsberg would retain the player, exchanging to appellee a building lot therefor.  He notified Tiller that he had changed his residence in Indianapolis, but did not notify him that he had placed the player in Ginsberg's possession.  Prior to April 27, 1915, appellee had transacted with

Tiller all business relating to the player piano. Under date of April 27, 1915, the Kimball company notified appellee by letter to make future payments to appellants, their local agents, and also to be prepared to pay them the balance due when they called, if he desired to retain possession of the piano. By letter of the same date the Kimball company wrote appellants to collect the balance due on the account, and on failure to do so to advise the company with suggestions as to the course that should be pursued under the circumstances as they found them to exist. Appellants, by reason of appellee's removal, were unable to locate him. Accidentally, however, on April 28, 1915, they located the instrument in Ginsberg's possession, and, ascertaining from the latter the arrangement under which they held it, took possession of it on that day. Under date of April 29, 1915, the Kimball company by letter notified appellee of the facts and that appellants had taken possession of it, and that it would be returned to him, if he would call on appellants and pay the balance due and the expense of taking possession. The company by letter dated May 17, 1915, notified appellee that he had fourteen days within which to redeem the piano by paying the balance due and expenses as aforesaid. By fixing such time the company evidently had in mind the date on which the last monthly payment would have been made under the contract, had the payments continued regularly. Appellee ignored these letters because he did not have the money to complete the payments. On June 2, 1915, he commenced this action in replevin, alleging in his complaint that he was the owner and entitled to possession of the instrument. No bond having been given, the instrument remained in the possession of appel-

lants. A trial resulted in a finding and judgment that appellee was entitled to the possession of the player piano and one dollar damages for its detention.

The contract involved here was executed in Kentucky by persons domiciled there, and by its terms was to be performed in that state. The situs 1. of the property which was the subject-matter of the contract also was in Kentucky. The construction and validity of the contract should therefore be determined by the laws of that state, if brought to the attention of the court in any proper manner. To have brought such laws to the 2. attention of a court of this state under the circumstances in this case in order that they might have been applied to the contract here, required that they be pleaded and proved as facts, which was not done. *Cable Co.* v. *McElhoe* (1914), 58 Ind. App. 637, 108 N. E. 790. Under such circumstances the common or unwritten law, as interpreted and applied in this state, governs. *Buchanan* v. *Hubbard* (1889), 119 Ind. 187, 21 N. E. 538. By such law the sale of personal property, under 3. the circumstances involved here, on condition that the title shall remain in the seller until the purchase price is paid, is valid, and the seller retains ownership though he delivers possession to the purchaser. *Cable Co.* v. *McElhoe, supra; Tanner* v. *Mishawaka, etc., Co.* (1901), 28 Ind. App. 536, 63 N. E. 313; *Domestic Sewing Machine Co.* v. *Arthurhultz* (1878), 63 Ind. 322.

Where, under such a contract as is involved here, the purchaser defaults in payment, or violates the conditions of the contract, the seller may neverthe-

less enforce payment in full, or at his election may peacefully repossess himself of the property sold, and apply payments as rent for the use of such property. *Green* v. *Sinker et al. Co.* (1893), 135 Ind. 434, 35 N. E. 262; *Smith* v. *Barber* (1899), 153 Ind. 322, 53 N. E. 1014; *Turk* v. *Carnahan* (1900), 25 Ind. App. 125, 57 N. E. 729, 81 Am. St. 85; *Shireman* v. *Jackson* (1860), 14 Ind. 459.

The removal of the player piano from Louisville to Indianapolis constituted a breach of one of the conditions of the contract, unless done with the written consent of Tiller or assigns. The record is silent respecting such consent. However, if such removal constituted a breach, Tiller and assigns waived it by afterwards recognizing the contract as in force.

Prior to April 14, 1915, appellee had defaulted in his payments by reason of which, under authorities above cited, the Kimball company, at its election, might have repossessed itself of the instrument. By the letter of that date Tiller, agent of the Kimball company, indicated that payment would be accepted at any time up to May 1, 1915. Something is said in the briefs as to whether the arrangement concluded by such letter amounted to a valid extension of the time of payment binding on the Kimball company. This question, however, is not controlling, as another principle intervenes and characterizes the transaction. If it be conceded that such arrangement did not amount to a valid extension of the time of payment, nevertheless, by such arrangement appellee was led to believe that possession would not be taken of the instrument based on default in payment prior to the time as fixed and limited by such arrangement. Tiller, therefore, act-

ing for the Kimball company, thereby waived all right to forfeit appellee's rights for nonpayment until the expiration of the time so named. The Kimball company, through Tiller, having by its conduct placed appellee in a position wherein he felt secure, and had a right to feel secure until May 1, could not lawfully, prior to that time, through another agent, suddenly and without warning assume an inconsistent position, to appellee's prejudice. *Cole* v. *Hines* (1895), 81 Md. 476, 32 Atl. 196, 32 L. R. A. 455; *Consumers Gas Trust Co.* v. *Littler* (1903), 162 Ind. 320, 328, 70 N. E. 363; *Miller* v. *Ready* (1915), 59 Ind. App. 195, 201, 108 N. E. 605; *Templer* v. *Muncie Lodge, etc.* (1911), 50 Ind. App. 324, 97 N. E. 546; *Rutherford* v. *Prudential Ins. Co.* (1904), 34 Ind. App. 531, 539, 73 N. E. 202; *Hukill* v. *Myers* (1892), 36 W. Va. 639, 15 S. E. 151; *National Cash Register Co.* v. *Richards* (1909), 159 Mich. 128, 123 N. W. 587.

The Kimball company, through appellants as its agents, repossessed itself of the instrument, April 28, 1915, and therefore prior to the expiration of the time as so limited. It follows that, as based on default in payment, its action was unwarranted. However, by the terms of the contract, an attempt to dispose of the instrument without the written consent of Tiller or assigns amounted to a breach of condition, by reason of which they were authorized at their election to take possession without demand or notice. There was a like provision relating to situations wherein Tiller or assigns should feel unsafe or insecure respecting the unpaid account. Appellee on his removal from Cooper street to some other point in the city delivered the instrument into the possession of a neighbor under some sort of an arrangement by which the latter expected to trade for it. Appellants, as agents, on

being directed to look after the matter, went to appellee's residence as reported to them, and found the house vacant. By a mere accident they located the instrument, as we have said, but on inquiry were unable to locate appellee, he having moved to a new location. The arrangement under which the neighbor held the instrument as reported to them was somewhat ambiguous. Under the circumstances they feared, and had just ground to fear, that the insurance carried on the player had become voidable. In such situation it is our judgment that appellants, as agents, were justified in taking possession of the instrument; and if so, appellee, especially in the absence of payment or tender, was not entitled to its possession.

There is yet another view of the case: It is apparent that the Kimball company, although possession was taken through appellants as agents, did 8. not entertain the purpose to deprive appellee of any right, advantage, or equity that he might have had under the contract. Thus, under date of April 29, they wrote a letter to appellee, directed to his former address, notifying him that the instrument was in the possession of appellants as agents, and requesting him to call on them and settle the account, in which case the player would be delivered to his order. The company wrote a like letter under date of May 17, notifying appellee that fourteen days yet remained within which he might redeem the instrument by paying the account. Appellee, although he received these letters, ignored them. He testified as a witness that he took no steps in the matter because he did not have the money with which to pay the account. On June 2, 1915, he commenced this action in replevin. If it should be conceded that appellants, as agents, were not entitled to

take possession of the instrument prior to May 1, and that their action in the matter was premature, or if conceded that appellants as such agents were not authorized to hold such possession while extending to appellee the privilege of completing his payments as by the letter of May 17, 1915, yet when he commenced this action the time limit in the contract for completing the payments, as well as all extensions thereof, had expired. He was in default. Under such circumstances, payment neither having been made nor tendered, he was not entitled to possession of the instrument. Had the instrument been in his possession at that time, the company at its election could have enforced the contract. We therefore conclude that the evidence does not sustain the decision. *A. F. Chase & Co.* v. *Kelly* (1914), 125 Minn. 317, 146 N. W. 1113, L. R. A. 1916A 912; *National Cash Register Co.* v. *Richards, supra.*

The judgment is reversed, with instructions to sustain appellants' motion for a new trial.

NOTE.—Reported in 117 N. E. 933. Conditional sales: effect of retaking property on the rights and remedies of parties, L. R. A. 1916A 915. See under (1) 35 Cyc 666; (5) 35 Cyc 696.