**KENNEDY et al. v. NATIONAL CASH REGISTER CO. (No. 3146.)**

(Court of Civil Appeals of Texas. Texarkana. Dec. 17, 1925.)

**1. Sales ⬅⇒451—Law of state in which conditional sale is finally consummated held to apply.**

Where order for cash register was transmitted to plaintiff in Ohio, but conditional sales contract was not finally consummated until delivery of register in Arkansas, rights of parties under contract *held* dependent on law of Arkansas, not requiring registration of contract, and not on Ohio law, requiring registration to bind subsequent purchasers.

**2. Sales ⬅⇒451—Rights between chattel mortgagee and vendor under conditional sales contract, determined by law of state of mortgagor's domicile.**

Respective rights of vendor of cash register under conditional sales contract, and mortgagee without notice, *held* determinable by the laws of Arkansas which was place of sale, domicile of mortgagor, and locus of property, notwithstanding mortgage was executed in Texas

and property was subsequently removed there by mortgagee.

Appeal from Bowie County Court; S. I. Robison, Judge.

Suit by the National Cash Register Company against F. L. Kennedy and others. Judgment for plaintiff, and defendants appeal. Affirmed.

King, Mahaffey & Wheeler, of Texarkana, Tex., for appellants.

Arnold & Arnold, of Texarkana, Ark., for appellee.

HODGES, J. The National Cash Register Company of Dayton, Ohio, brought this suit against the appellants to recover the value of a cash register to which it claimed title. The facts agreed upon are in substance as follows:

In July, 1923, one L. E. Bryant who lived and operated a business in Texarkana, Miller county, Ark., addressed an order to the National Cash Register Company at Dayton, Ohio, requesting the shipment to him, freight prepaid, of a cash register of a named description for use in his café business, for which he agreed to pay $300 as follows: $50 cash on arrival of the register, and $250 in monthly installments thereafter. Among other things, the order stipulated that upon the arrival of the register a note was to be executed by Bryant for $250, 11 installments of $20, and one of $30, to be payable monthly. It was also specified that the register should remain the property of the cash register company until the price or any judgment for same was paid in full. In September, 1923, after the arrival of the cash register, Bryant executed his note for the sum of $250, payable according to the terms of the order. In January, 1924, Bryant, in order to secure an indebtedness to the Guaranty State Bank of Texarkana, Tex., executed a chattel mortgage on personal property situated in his café in Miller county, Ark., including the cash register purchased from the appellee. This mortgage was recorded in Miller county, Ark. In March, 1924, Bryant sold out his business in Texarkana, Miller county, Ark., together with his furniture and fixtures and the cash register, to one C. E. Brower. In the purchase from Bryant Brower assumed the indebtedness of Bryant, including the debt to the Guaranty State Bank and the balance due on the cash register. Brower at the time resided in Bowie county, Tex., but conducted his business in Miller county, Ark. Thereafter Brower became insolvent, and filed a voluntary petition in bankruptcy in the United States District Court for the Eastern District of Texas. The trustee appointed took possession of Brower's personal property, which was located in Miller county, Ark. In the final disposition of the assets belonging to Brower it was agreed that the Guaranty

State Bank should have the right, as against other creditors of Brower, to the cash register mortgaged to secure its debt. Some time prior to this bankruptcy proceeding the Guaranty State Bank had been taken over by J. L. Chapman as commissioner of banking in Texas, and F. L. Kennedy had been appointed special agent to take charge of the assets. In pursuance of the agreement in the bankruptcy proceeding Kennedy took possession of the cash register, brought it into Texas, and now holds it as a part of the assets of the bank.

The evidence shows that the law of the state of Ohio (Gen. Code) contains the following provision:

"Sec. 8568. When personal property is sold to a person to be paid for in whole or in part in installments, or is leased, rented, hired or delivered to another on condition that it will belong to the person purchasing, leasing, renting, hiring, or receiving it, when the amount paid is a certain sum, or the value of the property, the title to it to remain in the vendor, lessor, renter, hirer or deliverer thereof, until such sum or the value of the property or any part thereof has been paid, such condition, in regard to the title so remaining until payment, shall be void as to all subsequent purchasers and mortgagees in good faith, and creditors unless the conditions are evidenced by writing, signed by the purchaser, lessee, renter, hirer or receiver thereof, and also a statement thereon, under oath, made by the person so selling, leasing or delivering the property, his agent or attorney of the amount of the claim, or a true copy thereof, with an affidavit that it is a copy, be deposited with the county recorder of the county where the person signing the instrument resides at the time of its execution, if a resident of the state, and if not such resident, then with the county recorder of the county in which the property is situated at the time of the execution of the instrument."

The evidence shows that this statute was never complied with, and it is conceded that the bank, at the time it took its mortgage from Bryant, had no notice of the claim of the appellee. It is also shown that the common-law rule applicable to conditional sales is in force in the state of Arkansas; that in transactions like this a reservation of title by the vendor is a conditional sale, and all purchasers and mortgagees from a vendee take subject to that reservation of title, without reference as to whether they have actual notice.

In both the justice and county courts judgment was rendered in favor of the appellee for the value of the cash register.

[1] The issues of law presented in this case must be determined by the legal rights which the Guaranty State Bank acquired at the time it took the mortgage on the cash register from Bryant. If the bank then held a right superior to the unrecorded conditional sale of the cash register company, the appellants, as the legal successors or representatives of the bank, are entitled to assert that

right in this suit. It is insisted that, since the order of Bryant for the cash register was transmitted to, and accepted by, the appellee at Dayton, Ohio, the sale was made in Ohio, and the law of that state should be looked to and applied in ascertaining the rights of the parties. If that proposition be correct, the appellee could not claim the benefit of a conditional sale, because of its failure to comply with the laws of Ohio in registering the proper evidence of the transaction, as required by the statute of that state. The proposition relied on states the general rule applied by the courts to personal contracts made by parties who at the time reside in different states. The rule is based upon the assumption that the acceptance of the offer is the final act in the negotiations essential to constitute a binding agreement. But in the transaction between Bryant and the appellee there are features which make that general rule inapplicable. The order for the cash register carried the stipulation that the property was to be delivered to the purchaser at Texarkana, Ark. After its receipt at that place Bryant was to make the cash payment and execute his note for the deferred payments. If the instrument had never reached Texarkana, Ark., after being shipped, Bryant could not have been held liable for the purchase price, because his obligation was contingent upon a delivery. That being true, the contract was finally consummated in Arkansas, and the laws of that state furnish the guide for determining the rights which the appellee acquired by the terms of its conditional sale. Cable Co. v. McElhoe, 58 Ind. App. 637, 108 N. E. 790; ·2 Elliott on Contracts, § 1117. It is conceded that under the laws of Arkansas a conditional sale of this character is not required to be registered, or recorded, in order to protect the vendor against subsequent purchasers and mortgagees without actual notice. If this controversy were in the state of Arkansas, the courts there would hold that the appellee's rights were unaffected by the failure to comply with the registration laws of the state of Ohio. Public Parks Amusement Co. v. Embree-McLain Carriage Co., 64 Ark. 29, 40 S. W. 582; Buchanan-Vaughan Auto Co. v. Woolsey (Tex. Civ. App.) 218 S. W. 554.

[2] But it is insisted that, as this controversy is in Texas, our courts should apply the statutes of this state, which make conditional sales chattel mortgages, and require their registration to be valid against subsequent purchasers and mortgagees without notice. In support of that proposition counsel for appellants refer to the following cases: Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S. W. 1072; Sanger v. Jesse French Piano & Organ Co., 21 Tex. Civ. App. 523, 52 S. W. 621. In the first case the controversy involved an automobile which had been bought and sold in California by parties then residing in that state. In the contract of sale the vendor reserved title till the deferred payments were made. Under the laws of California that was a conditional sale, and it was not required to be registered, or recorded in order to be valid against subsequent purchasers or mortgagees. Some time after the delivery of the automobile to the purchaser the latter, without the consent of the vendor, brought it into the state of Texas and sold it to Chambers, who had no notice of the California conditional sale. The Supreme Court held that under that state of facts Chambers should be protected, because the conditional sale in California had not been recorded as required by our statute. The court said:

"By the statutory law of this state a reservation of the title in chattels commonly known as a conditional sale is expressly declared to be a mortgage and subject to all the requirements of law relating to mortgages. Also the policy of this state is expressed in our statutes (articles 5654 and 5655, Vernon's Sayles' Texas Civil Statutes) that a mortgage of chattels, including conditional sales, is void as against third persons innocently purchasing the property for value, unless it is duly registered as provided therein."

The second case was decided by the Court of Civil Appeals upon facts substantially similar. But in the latter case the purchaser was protected only to the extent of what he paid at the time of the purchase.

Under the rule announced in those cases the unrecorded conditional sale made by the appellee to Bryant would be ineffective against the bank, or the appellants, its representatives in this suit, if the property had been brought into this state by Bryant, and while here it had been sold, or mortgaged to the bank, without notice of the claim of the appellee. But that was not done. It is true the mortgage was executed by Bryant in Texas, but his domicile was at the time in Arkansas, and the property which formed the subject-matter of the contract was then actually at his place of business in Miller county, Ark. That fact was known to the bank. The mortgage stipulated that Bryant was not to remove the property from Miller county without the consent of the bank. Had the property remained where the bank contracted it should, the foreclosure of the mortgage must have been sought in the state of Arkansas, and the laws of that state would have furnished the guide in determining the rights of the parties interested. The property was brought into the state of Texas and placed within the jurisdiction of Texas courts by the unauthorized act of the appellants. The provision in the contract authorizing the bank, in the event of default by Bryant in the payment of the debt, to take possession of the cash register and sell it at private or public sale did not empower the bank to take the property into another jurisdiction and there foreclose its mortgage. The parties con-

tracted with reference to the laws of Arkansas, the place where the property was situated, which was also the domicile of the mortgagor, and the laws of Arkansas should govern in determining the rights which the appellants may assert in this controversy. It was an Arkansas contract, although actually executed in Texas. Best v. F. & M. Bank (Tex. Civ. App.) 141 S. W. 334; Third Nat. Bank v. Bank of Commerce (Tex. Civ. App.) 139 S. W. 665; 2 Elliott on Contracts, § 1152. A purchaser cannot go into another state, take possession of property, bring it into this state, and then claim the benefit of the laws of this state to the exclusion of the laws of the state from which he wrongfully carried the property. If in the Chambers Case, above referred to, the vendee had purchased the automobile while it was in the state of California, and after brought it into Texas, doubtless a different conclusion would have been reached by the court in that case. The policy of our law, which protects an innocent purchaser, has never, so far as we know, been extended to include one who acquires the property under foreign laws different from ours.

We are of the opinion that the judgment of the trial court should be affirmed.